## No. 24123

**Upper Harmony Ditch Company, a Colorado corporation
v. Jim A. Stunkard, J. L. Stunkard and Gladys L. Stunkard**
(492 P.2d 631)

Decided January 3, 1972.          Rehearing denied January 24, 1972.

Raphael J. Moses, George Vranesh, Neil L. Carleton, for plaintiff in error.

Giacomini & Giacomini, Donald L. Giacomini, Davis, Graham & Stubbs, Clyde O. Martz, Rothgerber, Appel & Powers, for defendants in error.

*In Department.*

Opinion by MR. JUSTICE GROVES.

The plaintiff ditch company sought to enjoin the defendants from diverting water from Ramsey Draw and to obtain damages for such past diversions by the defendants. After certain depositions had been taken, affidavits filed and other documentary evidence was before the court, it granted the defendants' motion for summary judgment, stating that the

plaintiff might file "amended pleadings or Motion For New Trial within twenty days if it so desires." Within 20 days plaintiff filed an amended complaint. The defendants again filed a motion for summary judgment, which the court granted. We affirm.

The defendants (defendants in error here) urge that the matter became *res judicata* with the first order sustaining the motion for summary judgment, of which the plaintiff did not seek review. In view of the result which we reach, we assume that, by permitting the plaintiff to file "amended pleadings," the court intended the summary judgment to be vacated in the event the plaintiff did file an amended complaint. We treat the matter, therefore, as if the only order granting summary judgment was that entered under the second motion.

The defendants have an adjudicated priority to water from Ramsey Draw, which is later than that of the original Harmony Ditch No. 2.

The plaintiff is the owner of the Harmony Ditch No. 2. Its headgate formerly was on the north bank of the South Platte River from which the ditch proceeded northeasterly a substantial distance before reaching the users of its water. Before reaching the lands of the ditch's users, it crosses several draws. Water in these draws has flowed into and down the ditch. It appears that the headgate on the South Platte River has not been in place and the upper portions of the ditch have not been used for a number of years. It would seem, therefore, that in recent years the entire flow of the ditch has been collected from the draws which it intercepts.

I.

■■■ The principal thrust of the plaintiff's position is that the decree adjudicating the priority of the ditch (as well as a priority decree for an enlargement thereof) contemplated that one of the sources of water was from Ramsey Draw.

This ditch, the Knowles Spring Ditch No. 2 and other ditches were constructed near the close of the last century by C. D. McPhee and J. K. Mullen for irrigation of substantial acreages in northeastern Colorado. Harmony Ditch No. 2 and

Knowles Spring Ditch No. 2 were adjudicated in the same 1911 decree, the Harmony Ditch being awarded priority No. 28 and the Knowles Spring Ditch having priority No. 29. The two ditches later came under separate ownership, the plaintiff obtaining the Harmony Ditch. The plaintiff has no rights to the water adjudicated to the Knowles Spring Ditch.

The following findings were made in the adjudication:

"Said Harmony Ditch No. 2 is located in Logan County, Colorado, and takes its water supply from the South Platte river, from Knowles Springs Nos. 1 and 2, the seepage waters from the Iliff & South Platte Ditch, Powell and Dillon Ditch, the Powell Ditch, the Ramsey Ditch, and flood waters tributary to Knowles Spring Ditch No. 1 and Knowles Spring Ditch No. 2, through which said latter two ditches all of said waters (except that taken from the South Platte river) are conveyed to said Harmony Ditch No. 2.

\* \* \*

"The Knowles Spring Ditch No. 2 is also owned by C. D. McPhee & J. K. Mullen, composing the firm of McPhee & Mullen. Its headgate is at what is known as the Knowles Spring near the South West corner of the South East quarter of the South West quarter of Section thirty one (31) Township ten (10) North, of Range fifty (50) West.

\* \* \*

"The sources of its [Knowles Spring Ditch No. 2] water supply are the Knowles Spring at headgate, which furnishes a flow of about thirty cubic inches per second of time; flood waters naturally tributary thereto, and the seepage from the Iliff & Platte Valley Ditch, the Powell and Dillon Ditch, the Powell Ditch and the Ramsey Ditch, all of which amounts to about half the capacity of Harmony Ditch Nos. 1 and 2. The flood waters at times reach the full capacity of both of said ditches. The seepage waters amount to about sixty or seventy cubic feet. Said seepage and flood and spring waters have been applied to beneficial uses upon the lands lying under the said Knowles Spring Ditch No. 2 by means of said ditch and by the claimants thereof.

"About 2500 acres lying under Harmony Ditch No. 2 have been systematically irrigated by claimants from said ditch and the said feeders, Knowles Ditch No. 1 and Knowles Ditch No. 2, the water therefor being supplied sometimes by the South Platte river, sometimes the other sources named, and sometimes from both. Three hundred acres have been seeded to alfalfa and the rest used for hay purposes. There are one hundred and fifty miles of lateral to Harmony Ditch No. 2. The water from the Ramsey draw and other sloughs is stored in reservoirs for use in said Harmony Ditches, the same having been used for beneficial purposes by said claimants on their land under said ditches."

The decretal portion of the adjudicative decree specifies the South Platte River as the sole source of water for the Harmony Ditch No. 2 and adds that there also be allowed to flow in the ditch "for the benefit of the party or parties lawfully entitled thereto" water decreed to Knowles Spring Ditch No. 2. The decretal portion relating to the Knowles Spring Ditch No. 2 specified that the source of its water was as follows:

"[T]he natural flow from Knowles Spring No. 2, located at the headgate of the above named ditch estimated at thirty cubic inches per second of time; the flood waters naturally tributary to said ditch and the seepage waters from the Iliff and Platte Valley Ditch, the Powell and Dillon Ditch, the Powell Ditch and the Ramsey Ditch, and the waters from the Ramsey draw and other sloughs used for filling the storage reservoirs named in the findings as to the Harmony Ditch No. 2—"

When both of these ditches, as well as other ditches, were in common ownership and part of the agricultural ownership of McPhee and Mullen, there would be no need to question the source of water for any particular ditch. It is true that the findings contain some indication that waters from Ramsey Draw go to the Harmony No. 2 Ditch, and there is no question but what under the McPhee and Mullen operation Knowles Spring No. 2 Ditch water was transported through the Harmony Ditch No. 2. We must look, however, to the

adjudicative decree, rather than the findings, to ascertain the source of water for the respective ditches. The decree as to Harmony Ditch No. 2 did not mention Ramsey Draw, and gave as the only source the South Platte River.[1] The decree as to the Knowles Spring Ditch No. 2 specifically mentions that Ramsey Draw is one of the sources of water. Plaintiff cannot predicate a right to Ramsey Draw water upon the decree.

## II.

■ The plaintiff alleged that state officials charged with the administration of water recognized and interpreted the decree to require and permit water from Ramsey Draw to be diverted into plaintiff's ditch. The plaintiff contends that, such degree having been entered more than 18 years ago, under C.R.S. 1963, 148-19-1 it is entitled to Ramsey Draw water. This statute relates to decrees entered more than 18 years prior to commencement of an action to set the same aside. It provides that such a decree shall not be set aside or declared invalid because of any irregularity, of failure to give proper notice, of other defect in the adjudication proceedings, or of any other jurisdictional ground when,

"the following facts exist and are established by competent evidence, to-wit:

\* \* \*

"(d) That during said period of eighteen years or more immediately preceding the institution of said action, the water official or officials who had, de facto or de jure, exercised jurisdiction in the water district in which the diversion works were located, have continuously recognized said decree as though it had been validly entered, and caused or permitted water of the stream from which said water right was adjudicated to be diverted in accordance with the terms of the decree whenever water was available therefrom."

This statute is not applicable here. It relates to an action to set aside a decree or have it declared invalid. Here the

---

1. The Ramsey Ditch mentioned in the findings has no connection with Ramsey Draw. The Ramsey Ditch takes its water from the South Platte River.

plaintiff seeks to justify an interpretation of a decree because water officials have so interpreted it. The statute does not pertain to such a situation.

### III.

██ Plaintiff urges that it is entitled to the use of the Ramsey Draw water by reason of estoppel on the part of the defendants. We are accustomed to a view of estoppel as a defense and not as a basis for the establishment of a right. The defendants, however, have not raised this point. Consequently, we will pass by it without further comment.

The allegation in the complaint upon which estoppel is asserted reads as follows:

"All of the defendants knew or should have known of the plaintiff's practice of taking water from Ramsey Draw, that the same was a matter of public record and included in the annual reports of the water commissioners for many years before defendants purchased their land, and that they made their appropriation with this situation in effect, took the stream as it existed and are now estopped to assert superior rights."

The plaintiff has not met the standard set in *Lower Latham Ditch Co. v. Louden Irrigating Canal Co.,* 27 Colo. 267, 60 P. 629 (1900) as follows:

"We will not attempt to mention all the elements of estoppel as sought to be established in this case, it being sufficient for the purposes of this action to state that before the conduct of one party will create an estoppel in favor of another with respect to the title of the subject-matter of dispute between them, it must appear that the party against whom such estoppel is sought to be established was apprised of the true state of his own title; that by such conduct he intended to deceive or thereby was guilty of such negligence as to amount to a fraud; that the other was not only destitute of all knowledge regarding the true state of his title, but of the means of acquiring such knowledge. There must be some degree of turpitude in the conduct of a party before a court of equity will estop him from the assertion of his title, when the effect of the estoppel is to forfeit his property, and transfer its enjoyment to another."

This standard was quoted with approval in *Farmers Co. v. Fulton Co.,* 108 Colo. 482, 120 P.2d 196 (1941) and *Jacobs v. Perry,* 135 Colo. 550, 313 P.2d 1008 (1957).

The plaintiff cited no authority on the estoppel issue in its briefs, but in oral argument mentioned *Surface Co. v. Grand Co.,* 114 Colo. 543, 168 P.2d 906 (1946). That case involved estoppel by reason of the provisions of a contract, and is not controlling here.

In connection with the matter of estoppel, there is some significance in a portion of the testimony of the president of plaintiff in his deposition. We gather from this testimony that the plaintiff has been confronted with the problem of others using the Ramsey Draw water since 1934.

IV.

We call attention to the fact that the plaintiff has not asserted title by adverse possession. The complaint contains the following hint in this connection:

"4. Plaintiff has been taking water out of the South Platte River and from Ramsey Draw, a tributary to the South Platte River, as well as other draws, for beneficial use by and for its shareholders since May 3, 1897.

"5. During all the time since May 3, 1897 plaintiff has relied upon the waters from Ramsey Draw as well as the other sources above described, when water generally was not available from the South Platte River.

\* \* \*

"7. Plaintiff has in the past supplied water to shareholders in plaintiff company in Ramsey Draw, and a portion of the land presently owned by defendant, Jim A. Stunkard was so served."

This is not a sufficient allegation of title acquired by adverse possession; and the plaintiff has not argued that it so obtained title.

Judgment affirmed.

MR. JUSTICE KELLEY, MR. JUSTICE HODGES and MR. JUSTICE ERICKSON concur.