## No. 26600

## Upper Harmony Ditch Co. v. D. B. Carwin and Pauline Carwin
(539 P.2d 1282)

Decided July 28, 1975.

Moses, Wittemyer and Harrison, P.C., Vranesh and Musick, George Vranesh, for plaintiff-appellee.

Kreager and Dowis, Graydon F. Dowis, Jr., for defendants-appellants.

*En Banc.*

MR. JUSTICE GROVES delivered the opinion of the Court.

This case involves the question of whether the plaintiff ditch company has retained its rights to an easement for a ditch through the defendants' property, which rights were acquired by the ditch company in 1908. The water division of the district court held that it had retained them. We affirm.

The ditch involved was constructed in 1897 by two persons well-known to students of early Colorado development, C. D. McPhee and J. K. Mullen. McPhee and Mullen owned substantial quantities of Northeastern Colorado land and, in its development, constructed canals and ditches for its irrigation by waters of the South Platte River. The ditch and lands involved here are a part of that development.

The ditch company purchased the ditch, its water rights and easements in 1908, receiving a warranty deed. This included the easement for the ditch across the defendants' property. The defendants acquired title to a portion of their land traversed by the ditch by a treasurer's deed issued in 1941.

The ditch company was before this court — unsuccessfully — a few years ago with respect to water rights for this ditch. *Upper Harmony Ditch v. Stunkard*, 177 Colo. 6, 492 P.2d 631 (1972). It appeared there and here that the headgate of the ditch was on the north bank of the South Platte River from which the ditch proceeded northeasterly a substantial distance before reaching the lands of the water users. Below the land of the defendants but above the lands irrigated, the ditch crosses several draws. From about 1921 until 1969, the ditch company did not transport water through the portion of the ditch traversing the defendants' property, but rather took its water from these draws.

There was a large flood in 1921, which changed the course of the river at the point where the headgate was located and which probably washed out a portion of the headgate. It is a fair assumption from the evidence that no water proceeded through the upper part of the ditch from the time of the flood until a new headgate was completed in 1969 at a location about a quarter of a mile from the old one. In *Upper Harmony Ditch v. Stunkard, supra*, the trial court held that the ditch company did not have a right to water from the draws as a part of its decreed priority for South Platte River water — and we affirmed. We assume that the rumblings of that law suit caused the ditch company to look at its "hole

card" in the form of reversion to its original transportation of the water from the river.

On June 12, 1968 the ditch company filed an action in the District Court of Logan County to enjoin the defendants from interfering with the cleaning and maintenance of the ditch across the defendants' land. A restraining order issued on the same day and at that time the matter was set twelve days later for a hearing on a preliminary injunction. Prior to the hearing, the parties stipulated that the temporary restraining order should remain in effect until further order of the court, and that at any time the defendants might call up for hearing the ditch company's motion for preliminary injunction and to file an answer and other pleadings. The court entered an order under the stipulation that the temporary restraining order should remain in effect until further order of the court.

In 1970, the court entered an order which stated that it had been suggested that this matter was within the purview of the Water Right Determination and Administration Act of 1969 (1969 Perm. Supp., C.R.S. 1963, 148-21-1 et seq.[1]); and that "the Court not otherwise having been advised, concludes that the same is a water case. . . ." The cause was transferred to the Water Court of Division I, where it was tried.[2]

In 1974, after pre-trial, the case was tried on the prayer for a permanent injunction. The injunction against the defendants and in favor of the ditch company was granted.

The Prewitt Reservoir was constructed in about 1914, and the ditch company had an interest therein. Continuously from 1916 until the time of trial the ditch company paid its assessment for the use of this water. In order to use this water, it was transported in the river until it reached the ditch company's headgate in the river, where it was recaptured. Obviously, the ditch company did not so transport this water from 1921 until 1969. We did not note in the record the disposition, if any, the company made of the reservoir water during this period.

In 1964, the ditch company made a financial contribution to the Narrows Dam Association. Water from this project could be used only through the company's headgate on the river. In 1965 the ditch company purchased two culverts, and in 1966 installed them on the defendants' property. At the request of the ditch company, in 1965 the county constructed a bridge across the ditch immediately above the defendants' property.

In 1942 the defendants constructed some dikes across the ditch in order to keep river water from flooding the property. These were used by vehicles and cattle to cross the ditch.

---

[1] Section 37-92-101 et seq., C.R.S. 1973.

[2] There has been no objection to the transfer to the water court. Therefore, we neither approve nor disapprove that transfer. See In Re Water Rights of Fort Lyon Canal Co., 184 Colo. 219, 519 P.2d 954 (1974).

The defendants assert assignments of error which may be characterized as follows:

1. The treasurer's deed extinguished the ditch company's easement.

2. The ditch company abandoned its rights.

3. The ditch company lost its rights to the defendants by adverse possession.

4. The defendants were not estopped (as held by the trial court) to deny the rights of the ditch company.

5. There was error in admitting certain evidence.

6. The evidence was not sufficient to support the judgment.

7. The defendants were entitled to damages under their counterclaims.

The first two issues are the important ones. We dispose of the succeeding two with brief comment; and we find no merit in the remaining three.

I.

The defendants present the proposition that the rights of the ditch company were extinguished by the treasurer's deed as it created a virgin title, citing *Whiteman v. Mattson*, 167 Colo. 183, 446 P.2d 904 (1968); *Harrison v. Everett*, 135 Colo. 55, 308 P.2d 216 (1957); *McDermott v. Irrigation District*, 130 Colo. 44, 272 P.2d 995 (1954); and *City Real Estate v. Sullivan*, 116 Colo. 169, 180 P.2d 504 (1947). In the first two cases, it was held that the issuance of the tax deed halted the running of the prescriptive period of an adverse possessor. *McDermott* and *City Real Estate* rule that treasurer's deeds foreclose irrigation district assessments and special improvement tax levies.

Here, we have an entirely different situation. The easement was conveyed to the ditch company. It was not assessed to the taxpayer, upon whose default the treasurer's deed issued. The situation is analogous to *Mitchell v. Espinosa*, 125 Colo. 267, 243 P.2d 412 (1952), in which mineral rights have been severed, only the surface rights were assessed, and it was ruled that the treasurer's deed did not convey the mineral estate. An easement for a ditch is a far cry from the claims of an adverse possessor, who has not yet completed the prescriptive period, and from the rights of those holding other liens.

Here, we have an easement which is a separate interest in real property. This easement is not assessed as a part of the property which it burdens. The property assessed reflects its value apart from the easement. The treasurer's deed did not extinguish the ditch company's right-of-way and rights incidental thereto. *See Johnson v. McLaughlin*, 125 Colo. 298, 242 P.2d 812 (1952); *Restatement of Property* § 509(2) (1944); 2 *American Law of Property*, § 8.104 (A. J. Casner ed. 1952); and 2 *Thompson on Real Property*, § 448 (1961).

II.

We repeat familiar statements as to the law of abandonment. It must be proven by evidence of non-use and intention to abandon. Inten-

tion may be shown either expressly or by implication. Non-use for a long period of time is evidence of intention to abandon. It is not conclusive and merely establishes a prima facie case, and the presumption established by non-use can be rebutted. *South Boulder Co. v. Davidson Co.*, 87 Colo. 391, 288 P. 177 (1930); and *Sieber v. Frink*, 7 Colo. 148, 2 P. 901 (1883).

Here, the trial court found that the ditch company never intended to abandon the ditch; and, consequently, there was no abandonment. This finding and conclusion were supported by ample evidence, and will not be disturbed. *Ruston v. Centennial Real Estate & Investment Co.*, 166 Colo. 377, 445 P.2d 64 (1968).

### III.

The defendants contended that their construction of dikes and the use thereof constituted adverse possession. The court ruling otherwise should not be disturbed.

### IV.

Between the time a temporary restraining order was entered and the trial of the case, the defendants permitted the ditch company to reconstruct the ditch and build substantial facilities on defendants' land connected with the ditch. The trial court ruled that this estopped the defendants from questioning the ditch company's rights. The defendants claim that this was error. In the light of our foregoing disposition of this matter we need not reach the question.

Judgment affirmed.

MR. JUSTICE ERICKSON does not participate.