In the Matter of the Application for WATER RIGHTS OF MASTERS INVESTMENT COMPANY, INC., Applicant-Appellant,

v.

IRRIGATIONISTS ASSOCIATION, Jeris A. Danielson, State Engineer, State of Colorado, and James A. Clark, Division Engineer, Water Division No. 1., Objectors-Appellees.

No. 83SA38.

Supreme Court of Colorado, En Banc.

July 8, 1985.

Alvin L. Steinmark, Greeley, for applicant-appellant.

George A. Epperson, Donald F. McClary, Edward L. Zorn, Fort Morgan, for objector-appellee Irrigationists Ass'n.

Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Joel W. Cantrick, Sol. Gen., Wendy C. Weiss, Asst. Atty. Gen., Denver, for objectors-appellees Jeris A. Danielson and James A. Clark.

KIRSHBAUM, Justice:

Masters Investment Co., Inc. (Masters) appeals the judgment of the District Court for Water Division No. 1 declaring that the Schultz Ditch water rights, consisting of priorities No. 3 and No. 36 in the South Platte River in Weld County, Colorado, had been abandoned and denying Masters' request for a change of water rights. Masters asserts that the water court erred in finding an intent to abandon the water rights and in permitting the State Engineer to participate as a party to the consolidated proceedings.[1] We affirm.

I

A brief description of the procedural history of this litigation is in order to clarify the basis for the water court's decision.

On February 24, 1975, the Irrigationists Association (Irrigationists), an association of owners of water rights in the South Platte River as it traverses Weld County, Colorado, commenced proceedings in the District Court for Water Division No. 1 (Case No. W–7896–75) to declare the Schultz Ditch water rights abandoned. On August 29, 1979, the water court entered a decree, *nunc pro tunc* to April 30, 1979, declaring the Schultz Ditch rights to be abandoned. That decision was based primarily upon testimony of a water commissioner that official water records indicate that no diversions were ever made pursuant to the Schultz Ditch priorities and that the owners thereof never exerted efforts to put their decreed rights to beneficial use.

On October 24, 1979, Masters filed a "Petition to Correct Substantive Errors," pursuant to section 37–92–304(10), 15 C.R.S. (1973), and a "Motion Pursuant to C.R.C.P. 60(b)(3) for Relief from Void Judgment" in Case No. W–7896–75. These pleadings alleged lack of actual notice to and lack of personal service upon Masters and also asserted that the Schultz Ditch water rights had not been abandoned. The State Engineer entered an appearance in

the case, and on May 8, 1980, the water court set aside its initial decree of abandonment. Masters then filed a motion to dismiss Case No. W–7896–75 on jurisdictional grounds. On September 19, 1980, the water court denied the motion and directed Masters to determine whether it wished to raise the defense of lack of personal jurisdiction or if it preferred to waive that defense and proceed to a determination on the merits.

On February 25, 1981, Masters initiated a proceeding for change of water rights in the District Court for Water Division No. 1 (Case No. 81–CW–057). The petition stated in part that:

[S]ince the construction of the Riverside Reservoir the lands [historically irrigated by the Schultz Ditch] and adjoining said reservoir have been subirrigated from seepage waters originating from the Riverside Reservoir. It has not been necessary for the applicant to derive its source of supply of water from the South Platte River through the Schultz Ditch. The applicant, and its predecessors in title, have used the seepage from the Riverside Reservoir as an alternate source of supply.

Masters requested a decree designating seepage waters from the Riverside Reservoir as an alternate point of diversion for the Schultz Ditch priorities.

Irrigationists filed a petition in opposition to Masters' request, reasserting the claim of abandonment then pending in Case No. W–7896–75 and alleging that the proposed change would result in injury to Irrigationists. Masters then filed a motion to consolidate the two cases for trial, which motion was granted. Masters, Irrigationists and the State Engineer filed pretrial statements, and on December 2, 1981, the water court by pretrial order set the consolidated cases for hearing to commence May 3, 1982. The State Engineer participated in that hearing and offered an exhibit which

---

1. Masters also asserts that the water court erroneously denied his petition for a change in water rights. Because we affirm the conclusion that the rights have been abandoned, we do not address that issue.

was admitted into evidence. On December 30, 1982, the water court entered its order concluding that priorities No. 3 and No. 36 had been abandoned and denying Masters' request for a change of point of diversion.

## II

The following pertinent facts are established by the record. Masters, a Colorado corporation, purchased the Schultz Ditch water rights in 1971. These rights were decreed initially to W.C. Schultz in 1895, with priority dates of April 1, 1871, and April 1, 1888, for water rights No. 3 and No. 36, respectively. In his 1894 application for the decree, Schultz noted that his property was at that time irrigated in part by seepage water. The decree contained a specific description of the ditch and its headgate and recognized rights to divert seven cubic feet of water per second and twenty-one cubic feet of water per second for priorities No. 3 and No. 36, respectively.

The Schultz Ditch originally drew water from the South Platte River and traversed land owned by W.C. Schultz, most of which was subsequently purchased by Masters. The land owned by Masters is located in Weld County, Colorado. It is situated just south of the Riverside Irrigation System, and is adjacent to the north bank of the South Platte River. A major component of the Riverside Irrigation System is the Riverside Reservoir. Seepage from the Riverside Reservoir flows in a southeasterly direction, under Masters' land, and ultimately into the South Platte River. This seepage has created a rather lush meadow on Masters' property, and through the years has been sufficient to irrigate a natural hay crop.

Official records of the State Engineer introduced at trial reveal that from 1911 to 1954 water was drawn in the Schultz Ditch

on only one day, in 1917. These records contain notations to the effect that by 1920 the ditch was unable to carry water and that by 1944 the ditch was abandoned. The person who managed the subject property from 1937 to 1945 for Masters' predecessor-in-interest stated that the headgate to the ditch was washed away some time prior to 1929 and was never replaced, that he observed water running in the Schultz Ditch only once during his tenure as manager, and that the property was irrigated sufficiently by seepage water during that period of time. Two stockholders of Masters confirmed that the Schultz Ditch had not been used for many years because the property was sufficiently irrigated by seepage water. One of the stockholders confirmed that the headgate to the ditch had been lost and that the ditch had been washed out in two places. A hydrologist testified that the property in question had been satisfactorily irrigated by seepage from the Riverside Reservoir since the early part of this century.

## III

Masters argues that the evidence fails to support the water court's conclusion that the rights to the Schultz Ditch have been abandoned. Masters also suggests that the water court applied an erroneous legal standard in reaching that conclusion. Neither argument has merit.

 In Colorado, the issue of whether a water right has been abandoned invariably turns on the question of whether the owner of the right intended to abandon the right. *Beaver Park Water, Inc. v. City of Victor*, 649 P.2d 300 (Colo.1982); *Allard Cattle Co. v. Colorado & Southern Ry.*, 187 Colo. 1, 530 P.2d 503 (1974).[2] The General Assembly has recognized this principle in defining "abandonment of a water

2. A distinction has been drawn between the concepts of forfeiture of a water right and abandonment of such right. Forfeiture of a water right has been described as the involuntary forced loss of a water right caused by the failure of the owner to do or perform some act required by statute. Thus, in marked contrast to

the concept of abandonment, forfeiture may occur in the absence of an intent to abandon the right. *See* Note, *A Survey of Colorado Water Law*, 47 Den.L.J. 226, 277–78 (1970) (quoting C. Kinney, *Irrigation and Water Rights*, 2020 (2d ed. 1912)).

right" as "the termination of a water right ... as a result of the intent of the owner thereof to discontinue permanently the use of ... the water available thereunder." § 37–92–103(2), 15 C.R.S. (1973). As in most judicial inquiries into the state of mind of a particular person, the question of the intent of an owner of a water right is essentially a question of fact for determination by the trier of fact on the basis of the evidence produced at trial. *Beaver Park Water, Inc.,* 649 P.2d 300; *Knapp v. Colorado River Water Conservation District,* 131 Colo. 42, 279 P.2d 420 (1955); *San Luis Valley Land & Cattle Co. v. Hazard,* 114 Colo. 233, 157 P.2d 144 (1945).

■ In any given proceeding involving the issue of abandonment, the evidence may consist of testimony and documents which, while not direct evidence of intent, supply a sufficient basis to permit reasonable inferences concerning the critical state of mind of the owner of the water right. When such issue arises in the context of conduct occurring over a lengthy period of time, direct evidence of intent invariably becomes more difficult to discover. In recognition of these and other difficulties in ascertaining a particular owner's actual intent with regard to the abandonment of a water right, we have recognized certain evidentiary presumptions which may be relied upon by water courts when appropriate. Thus, we have stated that evidence of non-use of a water right for a lengthy period of time is in itself some evidence of an intent to abandon. *Upper Harmony Ditch Co. v. Carwin,* 189 Colo. 190, 539 P.2d 1282 (1975). Evidence of an unreasonably long period of non-use is sufficient to create a presumption of the owner's intent to abandon, requiring the owner to produce some evidence supporting the argument

that the owner did not intend to abandon the water right. *Beaver Park Water, Inc.,* 649 P.2d 300; *Hallenbeck v. Granby Ditch & Reservoir Co.,* 160 Colo. 555, 420 P.2d 419 (1966). When, as most often occurs, the record contains conflicting evidence on the issue of intent to abandon, the water court's final determination of this issue will rarely be overturned by this court. *Beaver Park Water, Inc.,* 649 P.2d 300.

■ In this case, the water court recognized that the uncontradicted evidence of lengthy non-use was sufficient to create a presumption of abandonment. It then expressly recognized that Masters had introduced evidence to rebut this presumption—evidence that the Schultz Ditch water rights were not used because they were not needed. Masters correctly argues that such evidence is probative of the question of intent. *See id.; Orr v. City & County of Denver,* 194 Colo. 125, 572 P.2d 805 (1977) (Erickson, J., concurring in part and dissenting in part); *Hallenbeck,* 160 Colo. 555, 420 P.2d 419; *Del Norte Irrigation District v. Santa Maria Reservoir & Irrigation Co.,* 108 Colo. 1, 113 P.2d 676 (1941); *New Mercer Ditch Co. v. Armstrong,* 21 Colo. 357, 40 P. 989 (1895). Masters incorrectly asserts that the water court failed to consider this evidence. The water court expressly noted Masters' explanation for the non-use of the Schultz Ditch water rights. The water court simply concluded that on the basis of all the evidence, including evidence that the headgate was not replaced since the 1920's and that the ditch itself was in disrepair, Irrigationists satisfied the burden of establishing an intent to abandon by a preponderance of the evidence. *See* § 13–25–127(1), 6 C.R.S. (1973).[3]

---

3. Masters refers to § 37–92–402(11), 15 C.R.S. (1984 Supp.), in the course of arguing that the evidence before the water court failed to establish an intent to abandon the Schultz Ditch water rights. Masters does not articulate the inferences it seeks to draw from this passing reference to the statutory language. Section 402 of article 92 deals with the preparation of quadrennial tabulations of all water rights in Colorado. Section 37–92–402(1)(a), 15 C.R.S.

(1984 Supp.), permits the State Engineer to omit from such tabulations any water rights "which the division engineer determines have been totally abandoned." Section 37–92–402(11) states as follows:

For the purpose of procedures under this section, failure for a period of ten years or more to apply to a beneficial use the water available under a water right when needed by the person entitled to use same shall create a

The record supports this ruling, and we conclude that the water court carefully applied appropriate legal standards in reaching it. We, therefore, affirm the water court's conclusion in Case No. W–7896–75 that the Schultz Ditch water rights, priorities No. 3 and No. 36, have been abandoned. This conclusion in effect renders moot the water court's decree in Case No. 81–CW–057 rejecting Masters' request for a change in the point of diversion for such water rights.

## IV

■ Masters also contends that the water court erred by permitting the State Engineer, and therefore the state, to participate as a party in the May 3, 1982, hearing and by admitting into evidence an exhibit offered by the state. Masters relies upon section 37–92–302(1), 15 C.R.S. (1973),[4] to support these arguments, which statute provided in pertinent part as follows:

(b) Any person who wishes to oppose [an application for change of water rights] may file with the water clerk in quadruplicate a verified statement of opposition setting forth the facts as to why the application should not be granted or why it should be granted only in part or on certain conditions. The water clerk shall mail a copy of such statement of opposition to the state engineer and the division engineer.

(c) Such statement of opposition must be filed by the last day of the second month following the month in which the application is filed.

Masters argues that the state was not a proper party because the state did not file a statement of opposition in either of the two consolidated actions and entered a formal appearance only in Case No. W–7896–75.

Masters' reliance upon section 37–92–302(1) is misplaced. The state's participation in the May 3, 1982, hearing was based on its entry of appearance in one of two consolidated proceedings. *See* § 37–92–304(3), 15 C.R.S. (1973).[5] No objection was raised at any time by Masters to the entry of appearance filed by the state in Case No. W–7896–75. Thus, when that case was consolidated with Case No. 81–CW–057 for all proceedings, the state was entitled to participate in the hearing. *See Wadsworth v. Kuiper*, 193 Colo. 95, 562 P.2d 1114 (1977). Masters makes no claim of surprise or prejudice. Under these circumstances, the State Engineer properly participated in the hearing of May 3, 1982.

■ The argument that the water court erred in admitting the state's water records into evidence because the state failed to furnish copies thereof to Masters within the time specified in the pretrial order is without merit. At the commencement of the trial, the state's counsel explained the cause for the delay and pointed out that the exhibit was a copy of a public record which had always been available to Masters. In admitting the documents into evidence, the water court offered Masters additional time to respond in the event Masters demonstrated any prejudice. In these circumstances, we find no abuse of discretion in

---

rebuttable presumption of abandonment of a water right with respect to the amount of such available water which has not been so used; except that such presumption may be waived by the division engineer or the state engineer if special circumstances negate an intent to abandon.
This language, then, provides a basis for the exclusion of water rights from the quadrennial tabulation referred to in § 37–92–402(1). While the presumption of complete abandonment created by § 37–92–402(11) may well be defeated by evidence that the particular water right was not needed, thus prohibiting or rendering void

any determination of abandonment by the State Engineer based on § 37–92–402(11), it is less than clear how that fact relates to the evidentiary issues raised here—that is, whether the evidence as a whole in this case is sufficient to support the water court's determination that owners of the Schultz Ditch water rights intended to abandon such rights.

**4.** Section 37–92–302(1)(b) has been amended. *See* § 37–92–302(1)(b), 15 C.R.S. (1984 Supp.).

**5.** Section 37–92–304(3) has been amended. *See* § 37–92–304(3), 15 C.R.S. (1984 Supp.).

the water court's decision to admit the state's exhibit into evidence.

The judgment is affirmed.