Clark M. BOLSER, in his capacity as trustee for Eugene Mines, Inc., a dissolved Colorado corporation, and Eugene Mines, Inc., Plaintiffs–Appellants,

v.

BOARD OF COMMISSIONERS FOR the COUNTY OF GILPIN, State of Colorado, Anchor Coin, Inc., CCSC/Black Hawk, Inc., Colorado Department of Transportation, and Burton Materials, Inc., Defendants–Appellees.

No. 03CA0178.

Colorado Court of Appeals, Div. IV.

Aug. 12, 2004.

Trauernicht, Evans & Kneisel, LLC, Ted W. Trauernicht, Jan Kneisel, Denver, Colorado, for Plaintiffs–Appellants.

Petrock & Fendel, PC, James J. Petrock, William L. Downey, Denver, Colorado, for Defendants–Appellees Board of Commissioners for the County of Gilpin, State of Colorado, Anchor Coin, Inc. and CCSC/Black Hawk, Inc.

Ken Salazar, Attorney General, Jennifer Lyn Mele, Assistant Attorney General, Denver, Colorado, for Defendant–Appellee Colorado Department of Transportation.

Opinion by Judge LOEB.

In this action to quiet title to property subject to right-of-way easements, plaintiffs, Eugene Mines, Inc. and Clark M. Bolser, as its trustee (together EMI), appeal the trial court's judgment in favor of defendants, the Board of County Commissioners for Gilpin County; Anchor Coin, Inc.; CCSC/ Black Hawk, Inc.; and the Colorado Department of Transportation. We affirm.

The parties proceeded to trial on stipulated facts and exhibits showing the following.

EMI owned a fee simple interest in property in Gilpin County. In 1938 and 1939, EMI deeded rights-of-way over some of the property to Gilpin County and the State of Colorado for construction of a highway. The 1938 and 1939 right-of-way deeds granted to Gilpin County an easement for highway purposes and granted to the State of Colorado the right to adopt and improve the easement as a state highway.

EMI became delinquent on its real property taxes, and, in 1949, a treasurer's deed conveyed EMI's Gilpin County property to the county.

The parties stipulated that the total acres encumbered by the easements granted in the 1938 and 1939 right-of-way deeds were fully accounted for in the 1949 treasurer's deed and were referenced in the treasurer's deed by the language contained in one paragraph, "less [number of] acres deeded to County of Gilpin for Highway Purposes as described in Deed recorded in ... Gilpin County Records," and similar language in four other paragraphs. The land referenced in those paragraphs thus matched the land described in the 1938 and 1939 right-of-way deeds. The treasurer's deed also conveyed to the county EMI's remaining interest in other Gilpin County property not burdened by the 1938 and 1939 right-of-way deeds and not at issue here.

Defendants Anchor Coin and CCSC/Black Hawk are subsequent transferees of the property conveyed to the county in the 1949 treasurer's deed.

EMI contends on appeal, as it did in the trial court, that the word "less" in the treasurer's deed means that it retained fee simple ownership of the acres described therein, subject only to the county's right to use those acres for highway purposes. The trial court disagreed, finding that the trea-

surer's deed conveyed a fee simple interest in the entirety of EMI's real property in Gilpin County, subject only to the easements granted in the 1938 and 1939 right-of-way deeds and that EMI did not retain any fee simple interest in the subject property. We agree with the trial court.

■ Interpretation of a written document presents a question of law subject to de novo appellate review. *See Collins v. Colo. Mountain Coll.*, 56 P.3d 1132, 1135 (Colo. App.2002). Further, because the judgment here was entered based upon stipulated facts and documentary evidence, we are obligated to make an independent judgment on the merits. *Lincoln Sav. & Loan Ass'n v. State*, 768 P.2d 733, 734 (Colo.App.1988).

■ In construing a deed, a court's paramount purpose is to ascertain the parties' intent. *Notch Mountain Corp. v. Elliott*, 898 P.2d 550, 557 (Colo.1995). "We must not ascertain intent from 'portions presented in isolated sentences and clauses,' but from the deed as a whole." *Michaelson v. Michaelson*, 939 P.2d 835, 839 (Colo.1997)(quoting *Notch Mountain Corp. v. Elliott, supra*, 898 P.2d at 557); *see Percifield v. Rosa*, 122 Colo. 167, 177, 220 P.2d 546, 551 (1950).

We conclude that the language of the 1949 treasurer's deed indicates an intent to grant fee simple title to Gilpin County, subject to the easements granted by the 1938 and 1939 right-of-way deeds. EMI contends that the word "less" applies to the "acres," indicating an intent to exclude the entire fee simple interest in those acres from the grant in the 1949 deed. However, reading the language in the treasurer's deed as a whole, the word "less" applies to the "acres deeded to the County . . . as described in Deed recorded in Gilpin County Records," and to the interest conveyed "for Highway Purposes." Thus, "less" applies to the easement interest described in the previously recorded 1938 and 1939 right-of-way deeds. Indeed, if we were to accept EMI's argument, the reference in the treasurer's deed to the 1938 and 1939 deeds would be meaningless.

EMI relies on the holding in *Lincoln Savings & Loan Ass'n v. State, supra*, that the word "less" used in a deed was not intended to reserve only an easement that was previously conveyed by the grantor, but reserved the entire fee simple in the acreage upon which the easement was situated. However, under the circumstances here, we conclude that *Lincoln Savings* is distinguishable and that its holding, based on the facts of that case, is not applicable here.

In *Lincoln Savings*, the state granted to a railway a right-of-way easement through state lands. The state subsequently granted the lands to two transferees, "less" a certain number of acres deducted for the previously granted easement and "subject to any and all easements or rights-of-way heretofore legally obtained." The transferees' parcels were eventually acquired by Lincoln Savings, and when the easement was abandoned, Lincoln Savings claimed fee simple title to the land. A division of this court ruled that the state had retained the fee simple interest in the land subject to the easements that were excepted from the grant.

■ In determining the effect of "less," the division in *Lincoln Savings* distinguished an "exception" from a "reservation." A reservation, on the one hand, occurs where the granting clause conveys the totality of the land described, but reserves to the grantor one or more of the rights that would comprise a fee simple absolute. An exception, on the other hand, totally excludes a specific portion of the property from the conveyance. *See Lincoln Sav. & Loan Ass'n v. State, supra*, 768 P.2d at 735. In *Lincoln Savings*, the division concluded that, despite the language in the deed which seemed to exclude only an easement, the state had created an exception rather than a reservation and thus had retained the entire fee simple interest in the land originally subject to the easement.

However, in *Lincoln Savings*, the division relied in significant part on a statute, which then stated that "whenever lands granted [by the state to a railroad] for any of the purposes mentioned in this section shall cease to be used for such purposes, said lands shall revert to the state." *See Lincoln Sav. & Loan Ass'n v. State, supra*, 768 P.2d at 736 (citing Colo. Sess. Laws 1905, § 35 at 332). No such statute applies here.

■ More important, *Lincoln Savings* did not involve a treasurer's deed. The purpose of a treasurer's deed is to terminate the taxpayer's entire ownership interest in the subject property by conveying the totality of the land on which the taxes are delinquent. *See Pyles v. Portland Gold Mining Co.*, 76 Colo. 598, 599, 233 P. 618, 619 (1925)(tax deed vests purchaser with all the rights the former owner had at the time of the sale); *see also* § 39–11–136(1), C.R.S.2003 ("The deed shall be signed by the treasurer in his official capacity and when so signed shall vest in the purchaser all the right, title, interest, and estate of the former owner in and to the land conveyed and also all right, title, interest, and claim of the state and county thereto."). Unlike in *Lincoln Savings*, where the state was the grantor, here, the county treasurer was the grantor and had no reason to reserve the underlying fee to itself or to EMI, the delinquent taxpayer.

Thus, because the deed at issue here is a treasurer's deed, and the purpose of such a deed is to transfer the entirety of the land owned by the delinquent taxpayer, we conclude that, unlike in *Lincoln Savings*, the language in the 1949 treasurer's deed referencing the 1938 and 1939 easements did not constitute an exception. Rather, this deed transferred the totality of the land owned by EMI in Gilpin County, subject to the existing easements that had already been transferred in the 1938 and 1939 right-of-way deeds. *See Upper Harmony Ditch Co. v. Carwin*, 189 Colo. 190, 539 P.2d 1282 (1975)(treasurer's deed conveyed entire property, but did not extinguish third party's previously acquired right-of-way). Our literal reading of the treasurer's deed here is thus consistent with the very purpose of a treasurer's deed, which is to take whatever title is owned by the delinquent taxpayer and transfer it following a tax sale.

Because we have concluded that the trial court correctly determined that EMI did not retain any interest in the subject property, we need not consider the parties' contentions concerning the trial court's alternative grounds for ruling in favor of defendants.

The judgment is affirmed.

Chief Judge DAVIDSON and Judge VOGT concur.