24CA1644 StreetMediaGroup v Dept of Transportation 11-20-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1644
City and County of Denver District Court No. 23CV30979
Honorable Sarah B. Wallace, Judge

---

StreetMediaGroup, LLC, and Turnpike Media, LLC,

Plaintiffs-Appellees,

v.

Department of Transportation, State of Colorado, and Shoshana Lew, in her official capacity as Executive Director of the Department of Transportation, State of Colorado,

Defendants-Appellants.

---

ORDER REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division VI
Opinion by JUDGE SULLIVAN
Welling and Bernard*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 20, 2025

---

Richards Carrington, LLC, Christopher P. Carrington, Todd E. Mair, Denver, Colorado; Lewis Wagner, LLP, Charles R. Whybrew, Indianapolis, Indiana, for Plaintiffs-Appellees

Philip J. Weiser, Attorney General, Barbara J. Stauch, Senior Assistant Attorney General, Denver, Colorado, for Defendants-Appellants

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1   In this judicial review action, defendant, the Colorado Department of Transportation (CDOT), appeals the district court's judgment overturning its final agency order that denied plaintiff, StreetMediaGroup, LLC (StreetMedia), two permits for outdoor advertising devices.  We reverse and remand with directions.

## I.   Background

¶ 2   Before addressing the parties' contentions, we briefly summarize the governing regulatory framework and the proceedings that led to this appeal.

### A.   Regulatory Framework

¶ 3   The General Assembly enacted the Outdoor Advertising Act (the Act), §§ 43-1-401 to -420, C.R.S. 2025, to control the existing and future use of "advertising devices" adjacent to the state highway system in a manner that promotes the health, safety, and welfare of the traveling public and the people of Colorado. § 43-1-402(1)(a), C.R.S. 2025; *see Orsinger Outdoor Advert., Inc. v. Dep't of Highways*, 752 P.2d 55, 60-61 (Colo. 1988) (discussing Colorado's substantial state interests under the Act).  CDOT administers the Act and has promulgated rules consistent with its provisions.  *See* § 43-1-415(1), C.R.S. 2025.

¶ 4     Under the "Interchange Rule," an advertising device outside of incorporated villages and cities may not be located adjacent to or within five hundred feet of an interchange, intersection at grade, or safety rest area.  Dep't of Transp. Rule 7.00(D)(2)(b), 2 Code Colo. Regs. 601-3.  Under the "Spacing Rule," two signs meeting the definition of a changeable electronic variable message sign can't be located within one thousand feet of one another on the same side of a highway and facing the same direction of travel.  *Id.* at Rule 12.00(C)(2)(a); *see also* § 43-1-404(1)(f)(I), C.R.S. 2025 (codifying the Spacing Rule in the Act); Dep't of Transp. Rule 12.00(B)(1), 2 Code Colo. Regs. 601-3 (defining "Changeable Electronic Variable Message Sign").

## B.     Administrative Proceedings

¶ 5     In January 2018, StreetMedia applied to CDOT for two roadside permits for signs located at 7300 Broadway in unincorporated Adams County — one on the east side and one on the west side of Interstate Highway 25.  The 7300 Broadway site sits within five hundred feet of the interchange that connects I-25 and U.S. 36.

2

¶ 6    CDOT denied both permits in September 2018, citing the Interchange Rule.  As a second ground for denial, CDOT noted that if both the west and east permits were approved, the signs would violate the Spacing Rule.[1]  StreetMedia requested a hearing before an Administrative Law Judge (ALJ) to contest CDOT's denials under the State Administrative Procedure Act (the APA), §§ 24-4-101 to -109, C.R.S. 2025.[2]  *See* § 24-4-105, C.R.S. 2025.

¶ 7    Before the ALJ, StreetMedia argued that CDOT's denials were arbitrary and capricious because the agency had approved other companies' signs that also violated the Interchange Rule.  During a two-day evidentiary hearing, CDOT's outdoor advertising program supervisor testified that CDOT had issued permits by mistake for at least three of the noncompliant signs identified by StreetMedia.  StreetMedia offered into evidence a 2004 administrative decision that confirmed that CDOT had issued the three permits in error.

---

[1] In 2021, the General Assembly amended the Outdoor Advertising Act, causing CDOT to also amend its rules.  *See* Ch. 388, secs. 1-11, 2021 Colo. Sess. Laws 2588-94.  The amendments didn't affect either the Interchange Rule or the Spacing Rule.

[2] StreetMedia also requested hearings to contest two other permit denials by CDOT.  The ALJ consolidated the four permit denials into a single proceeding.  Only the 7300 Broadway permits are at issue in this appeal.

The CDOT supervisor also testified that CDOT renews permits annually for approximately 2,200 signs through an automatic process.

¶ 8     The ALJ found that CDOT issues or denies initial permits "based on the specific facts related to the site" where the proposed sign will be located. By contrast, CDOT's annual renewal of the permits, the ALJ found, is "relatively automatic."

¶ 9     The ALJ also found that CDOT had mistakenly issued an initial permit for at least one sign that didn't comply with the Interchange Rule. The ALJ noted, however, that evidence in the record suggested that CDOT had issued initial permits for six signs that violated the Interchange Rule. With respect to these six permits, the ALJ found as follows:

> The ALJ further concludes that the issuance of [the six] permits in each case . . . was based upon the[] specific facts and circumstances related to the site in question. The ALJ is unable to conclude from the evidence in the record that [CDOT] volitionally violated the statute or rules governing outdoor advertising in each of the specific instances.

¶ 10    The ALJ ultimately resolved the dispute based solely on the Spacing Rule, concluding that CDOT had erroneously denied

4

StreetMedia's permits because the two proposed signs weren't on the same side of the highway. As a result, the ALJ determined StreetMedia was entitled to a permit for one of its proposed signs at the 7300 Broadway site.

¶ 11     On exceptions, CDOT's executive director modified the ALJ's initial decision in part by denying both of StreetMedia's requested permits. *See* § 24-4-105(14)(a)(II). The executive director explained that, although the ALJ determined the two proposed signs didn't violate the Spacing Rule, they still violated the Interchange Rule.

¶ 12     The executive director also rejected StreetMedia's argument that substantial evidence contradicted the ALJ's finding that CDOT hadn't violated the Interchange Rule "volitionally" when it granted the six noncompliant permits.

## C.     District Court Proceedings

¶ 13     StreetMedia sought judicial review of CDOT's final agency order under section 24-4-106(4), C.R.S. 2025, asserting CDOT's permit denials were arbitrary and capricious. As relevant here, StreetMedia also asserted claims for declaratory and injunctive relief based on its right to equal protection under the Fourteenth

Amendment and its right to free speech under the First Amendment.

¶ 14    The district court agreed with StreetMedia's "class of one" argument under the Equal Protection Clause, leading it to overturn CDOT's final agency order. According to the district court, CDOT violated StreetMedia's right to equal protection because CDOT treated similarly situated competitors more favorably by approving permits for their signs that violated the Interchange Rule, yet CDOT declined to issue StreetMedia similar permits for its noncompliant signs.

¶ 15    The district court, however, rejected StreetMedia's other arguments, including its free speech argument under the First Amendment.

¶ 16    CDOT now appeals. It contends that the district court erred by (1) substituting its own factual findings for the ALJ's to arrive at an equal protection violation and (2) issuing an advisory opinion on the constitutionality of a prior version of the Act and CDOT's corresponding rules as applied to StreetMedia. For its part, StreetMedia defends the district court's analysis under the Equal Protection Clause. StreetMedia also argues, in the alternative, that

we may uphold the district court's judgment based on CDOT's violation of its right to free speech under the First Amendment.

¶ 17    Because we agree with CDOT's first contention, we need not address the second. We also address and reject StreetMedia's alternative ground for affirmance under the First Amendment.

## II.    Equal Protection

¶ 18    We first address CDOT's contention that the district court erred by substituting its own factual findings for the ALJ's when assessing StreetMedia's equal protection claim.

### A.    Standard of Review and Applicable Law

¶ 19    On appeal from a district court's review of a final agency action, we apply the same standard of review as the district court under the APA. *See* § 24-4-106(7); *Gessler v. Grossman,* 2015 COA 62, ¶ 9, *aff'd sub nom., Gessler v. Smith,* 2018 CO 48. We review the ALJ's legal determinations de novo, but we may not overturn the ALJ's factual findings unless they are clearly erroneous on the whole record. § 24-4-106(7)(b)(VII); *Jansma v. Colo. Dep't of Revenue,* 2023 COA 59, ¶¶ 17-18. When conflicting testimony is presented in an administrative hearing, the witnesses' credibility and the weight afforded to their testimony are decisions within the

province of the presiding ALJ. *Colo. Ethics Watch v. City & Cnty. of Broomfield*, 203 P.3d 623, 626 (Colo. App. 2009).

¶ 20    We accord administrative proceedings a presumption of validity and regularity. *Wildwood Child & Adult Care Program, Inc. v. Colo. Dep't of Pub. Health & Env't*, 985 P.2d 654, 655 (Colo. App. 1999). The party challenging the agency action bears the burden of overcoming the presumption that the agency's acts were proper. *Id.*

¶ 21    In a "class of one" equal protection claim, a plaintiff must allege that they have been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). As our supreme court has explained in a case involving Colorado's enforcement of the Act, "[a] claim of discriminatory enforcement must be supported by evidence which will permit a factfinder to reasonably conclude that the enforcement not only proceeded from an unjust and illegal discrimination between persons in similar circumstances but also that the discriminatory enforcement was intentionally or purposefully carried out." *Orsinger*, 752 P.2d at 62. Whether the government

acted intentionally or purposefully is a question of fact reserved for the fact finder. *See id.*

### B. Analysis

¶ 22    We conclude the district court improperly rejected the ALJ's factual findings regarding CDOT's intent when it determined that CDOT violated StreetMedia's right to equal protection.

¶ 23    A successful discriminatory enforcement claim under the Equal Protection Clause requires the claimant to show intentional or purposeful discrimination. *Id.* Thus, StreetMedia had to show, at minimum, that CDOT intentionally or purposefully (1) approved permits for other companies' signs that violated the Interchange Rule and (2) chose to treat StreetMedia differently by refusing to approve permits for its signs that also violated the rule.

¶ 24    But the ALJ found no evidence that CDOT intentionally or purposefully violated the Interchange Rule when approving permits for other companies' noncompliant signs. Specifically, the ALJ said he couldn't conclude that CDOT "volitionally" violated any law or regulation governing outdoor advertising devices. *See Lindquist v. City of Pasadena,* 656 F. Supp. 2d 662, 703 (S.D. Tex. 2009) (granting the city summary judgment on the plaintiffs' class of one

9

equal protection claim, in part, because the city didn't "intentionally ignore[]" city ordinances when issuing licenses to the plaintiffs' competitors), *aff'd*, 669 F.3d 225 (5th Cir. 2012); *Bernard v. Village of Hinsdale*, 411 F. Supp. 2d 965, 969 (N.D. Ill. 2006) (rejecting the plaintiffs' class of one equal protection claim because the evidence didn't show that the government "intentionally ignored the zoning code" when issuing a permit to a similarly situated property owner).

¶ 25    On the contrary, the ALJ found, with record support, that CDOT granted at least some of the earlier permits by mistake. Mere mistakes or errors of judgment don't rise to the level of intentional or purposeful discrimination that will support a claim under the Equal Protection Clause. *See Snowden v. Hughes*, 321 U.S. 1, 8 (1944) ("[W]here the official action purports to be in conformity to the statutory classification, an erroneous or mistaken performance of the statutory duty, although a violation of the statute, is not without more a denial of the equal protection of the laws."); *Seven Star, Inc. v. United States*, 873 F.2d 225, 227 (9th Cir. 1989) ("[E]qual protection principles should not provide any basis for holding that an erroneous application of the law in an earlier case must be repeated in a later one."); *E & T Realty v. Strickland*, 830

F.2d 1107, 1114 (11th Cir. 1987) ("The requirement of intentional discrimination prevents plaintiffs from bootstrapping all misapplications of state law into equal protection claims.").

¶ 26 We recognize that the ALJ addressed whether CDOT acted volitionally, not whether it acted intentionally or purposefully. But the terms overlap. *See Starr v. Indus. Claim Appeals Off.*, 224 P.3d 1056, 1066 (Colo. App. 2009). Acting with "volition" means having the power or ability to choose and decide or to exercise some control over the circumstances, as opposed to acting in an involuntary or accidental manner. *Id.* Intentional actions, by contrast, are those made "purposefully and with design." *Id.* While one may act volitionally without necessarily acting with intent or purpose, *see id.*, in this context we fail to see how the reverse could be true. Stated differently, the ALJ's factual finding that CDOT acted without volition — that is, by accident — when previously approving permits for noncompliant signs precludes a finding that it acted purposefully or intentionally.

¶ 27 We agree with StreetMedia that it presented some evidence from which a fact finder could have inferred intentional or purposeful discrimination by CDOT. But we must defer to the

11

ALJ's resolution of the witnesses' credibility, the weight accorded to the evidence, and the conflicting inferences reasonably drawn from the evidence. *See Colo. Ethics Watch*, 203 P.3d at 626; *Mondragon v. Poudre Sch. Dist. R-1*, 696 P.2d 831, 835 (Colo. App. 1984). And whether CDOT acted intentionally or purposefully is a question of fact that fell squarely within the ALJ's purview as fact finder. *See Orsinger*, 752 P.2d at 62; *see also Water Rights of Masters Inv. Co. v. Irrigationists Ass'n*, 702 P.2d 268, 272 (Colo. 1985) ("As in most judicial inquiries into the state of mind of a particular person, the question of the intent . . . is essentially a question of fact for determination by the trier of fact on the basis of the evidence produced at trial" and "will rarely be overturned" by an appellate court).

¶ 28    As reviewing courts, neither this court nor the district court is free to substitute our factual findings for the ALJ's. *See M.D.C./Wood, Inc. v. Mortimer*, 866 P.2d 1380, 1382 (Colo. 1994). This is no less true when the claimant raises a constitutional challenge. *See* § 24-4-106(7)(d) ("In all cases under review, the court shall determine all questions of law and interpret the

statutory and constitutional provisions involved and shall apply the interpretation to the facts duly found or established.").

¶ 29 StreetMedia nonetheless points to CDOT's annual permit renewals for other companies' noncompliant signs as evidence of the agency's discriminatory enforcement and argues that CDOT is obligated by law to deny such renewals. We aren't persuaded for two reasons. First, StreetMedia, as an initial permit applicant, isn't similarly situated to other companies that merely renew an existing permit.[3] *See Orsinger*, 752 P.2d at 62 (discriminatory enforcement claim requires persons occupy "similar circumstances"); *see also Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1216 (10th Cir. 2011) (a plaintiff alleging a "class of one" equal protection claim must first establish others are similarly situated in every material respect (citation omitted)). The ALJ found that while CDOT

---

[3] StreetMedia argues that CDOT gave preferential treatment to three of its competitors that are "larger players" in Colorado's outdoor advertising industry: Lamar Advertising Company; Outfront Media, Inc.; and Mile High Outdoor Advertising. But StreetMedia didn't establish that these competitors owned, at the time of CDOT's initial permitting, any of the six signs that the ALJ identified as violating the Interchange Rule. At most, StreetMedia showed that certain of its competitors *later* became successors to some of the initial permits for those signs.

evaluates the specific information contained within an *initial* permit application against the Act and the agency's corresponding rules, the annual permit renewal process differs because a renewal is "relatively automatic."

¶ 30    The record supports this finding.  CDOT's outdoor advertising program supervisor testified that CDOT regulates approximately 2,200 signs and that it sends out annual renewal invoices for each through an "automatic process."  Given the lack of scrutiny that permit renewals receive, we can't say, on this record, that StreetMedia is similarly situated to other companies that renew an existing permit.

¶ 31    Second, even if we assumed both that StreetMedia was similarly situated to companies that renew an existing permit and that the law required CDOT to deny a renewal permit for a noncompliant sign (an issue we don't reach), the ALJ's factual findings still don't reveal intentional or purposeful discrimination by CDOT.  This deficiency alone defeats StreetMedia's equal protection claim.  *See Orsinger*, 752 P.2d at 62.

¶ 32    StreetMedia also argues that the ALJ clearly erred by finding that CDOT's approval of other permits for noncompliant signs was

based upon "specific facts and circumstances related to the site in question." According to StreetMedia, no substantial evidence supports this finding. We need not decide whether substantial evidence supports this finding because, even if the evidence fell short, the ALJ's finding that CDOT didn't volitionally violate the Interchange Rule when approving those permits is dispositive of StreetMedia's equal protection claim. *See id.*

¶ 33 Accordingly, the district court erred by rejecting the ALJ's factual finding regarding CDOT's intent when evaluating StreetMedia's equal protection claim.

### III. First Amendment

¶ 34 StreetMedia argues that we may affirm the district court's judgment on an alternative ground — namely, that CDOT's selective enforcement of the Interchange Rule violated its right to free speech under the First Amendment. We aren't persuaded.

¶ 35 At the outset, we reject CDOT's argument that StreetMedia's failure to file a notice of cross-appeal precludes us from reaching this issue. True, an appellee must generally file a notice of cross-appeal to raise a contention that, if successful, would increase its rights under the judgment or order being reviewed. *Koinis v. Colo.*

15

*Dep't of Pub. Safety*, 97 P.3d 193, 197 (Colo. App. 2003).  But here, StreetMedia doesn't seek to enlarge its rights under the district court's judgment.  Rather, it seeks merely to uphold the existing judgment on alternative grounds, which is permissible.  *See Brightstar LLC v. Jordan*, 2024 COA 39, ¶ 91 n.6.

¶ 36    Nonetheless, StreetMedia's free speech argument fails for the same reason as its equal protection argument.  As we understand StreetMedia's contention, CDOT discriminated against it by selectively enforcing the Interchange Rule against StreetMedia but not "larger players" in Colorado's outdoor advertising industry, thus violating its right to free speech.  But, as with an equal protection claim, a claimant alleging discrimination under the First Amendment "must show that a government official 'acted with discriminatory purpose.'"  *Pahls v. Thomas*, 718 F.3d 1210, 1236 (10th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)); *see also McGuire v. Reilly*, 386 F.3d 45, 63 (1st Cir. 2004) ("Unless government actors were to intentionally enforce the statute unequally, then any evidence of inequality that plaintiffs were to show would merely indicate a 'disproportionate[] burden[]' that would not signify viewpoint discrimination." (citation omitted)).

16

¶ 37    As discussed, the ALJ, after hearing the evidence, found that CDOT didn't act volitionally, much less intentionally or purposefully. CDOT's executive director adopted the ALJ's finding in the final agency order. The district court declined to disturb the agency's order on First Amendment grounds. Like the district court, we may not substitute our factual findings for the ALJ's. *See M.D.C./Wood, Inc.*, 866 P.2d at 1382.

¶ 38    StreetMedia's reliance on *City of Madison, Joint School District No. 8 v. Wisconsin Employment Relations Commission*, 429 U.S. 167, 175-76 (1976), is misplaced. In *City of Madison*, the Supreme Court struck down Wisconsin's attempt to prohibit nonunion teachers from expressing their views on collective-bargaining negotiations at public school board meetings. *Id.* No dispute existed that Wisconsin intentionally discriminated based on the speaker's identity as a nonunion teacher. In this case, though, the ALJ didn't find that CDOT intentionally or purposefully discriminated against StreetMedia based on its identity as a "smaller" advertising company, or for any other reason.

¶ 39 Accordingly, StreetMedia's alternative argument under the First Amendment provides no basis for upholding the district court's judgment.

## IV. Disposition

¶ 40 We reverse the portion of the district court's judgment overturning CDOT's final agency order and remand the case to the district court to reinstate the final agency order.

JUDGE WELLING and JUDGE BERNARD concur.