The **PEOPLE** of the State of Colorado ex rel. Jeris A. **DANIELSON**, State Engineer, and Alan D. Berryman, Division Engineer for Water Division No. 1; and Cottonwood Water and Sanitation District, Appellants,

v.

The **CITY OF THORNTON** and Edward B. Sutton, Protestants–Appellees

and

Denver Southeast Suburban Water and Sanitation District; Arapahoe Water and Sanitation District; Parker Properties Joint Venture; Hi Plains Land and Cattle Company; MDC Land Corporation, a Colorado corporation; Twenty Mile Joint Venture, a Colorado joint venture; and Parker Water and Sanitation District, Appellees.

Nos. 87SA172, 87SA173.

Supreme Court of Colorado,
En Banc.

May 30, 1989.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Stephane W. Atencio, Asst. Atty. Gen., Bradley W. Cameron, Asst. Atty. Gen., Denver, for appellant State of Colo.

M.E. MacDougall, Colorado Springs, for appellant Cottonwood Water and Sanitation Dist.

Broadhurst, Petrock & Fendel, Kenneth L. Broadhurst, James J. Petrock, Frederick A. Fendel III, White & Jankowski, Michael D. White, David F. Jankowski, Denver, for protestant-appellee City of Thornton.

Allbright & Buchanan, P.C., Martha Phillips Allbright, Denver, for protestant-appellee Edward B. Sutton.

Moses, Wittemyer, Harrison and Woodruff, P.C., Robert E.L. Beebe, James R. Montgomery, Boulder, for appellee Denver Southeast Suburban Water and Sanitation Dist.

Stephen T. Williamson, Christopher L. Smith, Louisville, for appellees Arapahoe Water and Sanitation Dist., Parker Properties Joint Venture, Hi Plains Land and Cattle Co., MDC Land Corp., and Twenty Mile Joint Venture.

Robert F.T. Krassa, Law Offices of Robert F.T. Krassa, P.C., Pueblo, for appellee Parker Water and Sanitation Dist.

LOHR, Justice.

This is an appeal from a judgment of the District Court for Water Division 1 (water court) deleting two water rights from the 1984 revised abandonment list prepared by the division engineer. The water rights at issue were decreed to Heim Wells Nos. 1 and 2 through a supplemental adjudication in 1972. The water court held that the division engineer had established a presumption of abandonment for both of the water rights by showing that for a period of ten years or more the water available under the decreed rights had not been applied to a beneficial use when needed. *See* § 37-92-402(11), 15 C.R.S. (1988 Supp.). The water court then concluded that the water rights owners had rebutted the presumption of abandonment by demonstrating a lack of intent to abandon those rights. The state and division engineers and Cottonwood Water and Sanitation District, which had appeared in the water court in support of the engineers' position, appealed. We affirm the judgment of the water court.

### I.

This case arises under section 37-92-402 of the Water Right Determination and Administration Act of 1969, §§ 37-92-101 to 37-92-602, 15 C.R.S. (1973 & 1988 Supp.) (Water Right Act). The Water Right Act requires each division engineer, with the approval of the state engineer, to prepare a tabulation of·all water rights and conditional water rights in his division no later than July 1, 1978. § 37-92-402(1)(a), 15 C.R.S. (1988 Supp.). Additionally, the division engineer is required to prepare a separate list of the water rights "which he determines to have been abandoned in whole or in part." *Id.* The division engineer must give notice of the 1978 tabulation and abandonment list, and a period of time is allowed for owners or claimants adversely affected to file statements of objection with the division engineer. § 37-92-402(2), (3). The division engineer must then resolve any objections and make any revisions in the tabulation and the abandonment list that he deems proper on or before July 1, 1984. § 37-92-402(4). In making a determination regarding the abandonment of a water right, "the division engineer shall investigate the circumstances relating to each water right, the water available under which has not been fully applied to beneficial use, and in such cases shall be guided by the criteria set forth in subsection (11) of this section." § 37-92-402(1)(a). Subsection 11 provides that

> failure for a period of ten years or more to apply to a beneficial use the water available under a water right when needed by the person entitled to use same shall create a rebuttable presumption of abandonment of a water right with respect to the amount of such available water which has not been so used; except that such presumption may be waived by the division engineer or the state engineer if special circumstances negate an intent to abandon.

§ 37-92-402(11), 15 C.R.S. (1988 Supp.).

Once the abandonment list has been finalized, the division engineer must give notice of the abandonment list and the revisions in the manner prescribed by statute to the owners or claimants of the water rights listed. § 37-92-402(5). Any person who wishes to protest the inclusion of any water right on the abandonment list must file a written protest with the water clerk and the division engineer. *Id.;* § 37-92-401(5). The water judge must

then conduct hearings on the abandonment list and any protests that have been filed. §§ 37–92–401(6), 402(6). At the conclusion of such hearings, the water judge "shall enter a judgment and decree which shall either incorporate the abandonment list of the division engineer as filed or incorporate such list with such modifications and conditions as the water judge may determine proper after the hearings." § 37–92–401(6). Appellate review of the judgment and decree as in other water matters is provided for under section 37–92–402(9).[1]

The present case is based upon protests to the revised 1978 abandonment list issued on July 1, 1984, which included Heim Wells Nos. 1 and 2.[2] The water court determined that the water rights for these wells had not been abandoned and deleted them from the abandonment list. The state engineer, the division engineer, and Cottonwood Water and Sanitation District, which had appeared in the water court in support of the division engineer's determinations of abandonment, appealed.[3] A summary of the relevant history of these two wells as reflected by the evidence presented at the hearing before the water judge will provide the necessary background for our consideration of the abandonment issue presented by this appeal.

## II.

Heim Wells Nos. 1 and 2 are located on agricultural property formerly owned by Theresa Heim near Franktown, Colorado.[4] At the time of the hearing, Heim Well No. 1 was owned by the City of Thornton, and Heim Well No. 2 was owned by Edward B. Sutton. Thornton had an option to purchase Well No. 2 from Sutton. A 1972 supplemental adjudication by the Douglas County District Court decreed a right to 1.22 cubic feet per second (cfs) of underground water tributary to Cherry Creek for Heim Well No. 1, with a priority date of September 7, 1950, for domestic, stock watering, irrigation and municipal uses. In that same adjudication, Heim Well No. 2 was decreed a right to 2.34 cfs of underground water tributary to Cherry Creek, with a priority date of June 25, 1956, for the same purposes as Well No. 1. The 1972 decree lists Franktown Land and Investment Company as the water rights claimant for Heim Wells Nos. 1 and 2. Franktown Land and Investment Company had acquired the Heim property, wells, and water rights from Lawrence and Patricia Mikelson on December 31, 1968. Lawrence Mikelson had filed the original claim for water rights to Heim Wells Nos. 1 and 2 on August 7, 1968, and Franktown Land and Investment Company had filed an amended statement of claim on April 21, 1970. Castlewood Development Company (Castlewood) acquired the Heim property, wells, and water rights from Franktown Land and Investment Company on December 30, 1971.

Castlewood purchased the Heim property for the purpose of subdividing it into residential homesites. In addition to subdividing the greater part of the property as "Castlewood North," Castlewood sold the remaining eighty acres of the original Heim farm property, on which Wells Nos. 1 and 2 were situated, in June 1972. However, in disposing of its interests in the Heim property Castlewood retained ownership of the Heim Wells Nos. 1 and 2 and

---

1. § 37–92–402 governs preparation and finalization of the 1978 tabulation and abandonment list. Thereafter, tabulations are to be prepared quadrennially and abandonment lists decennially under procedures prescribed by § 37–92–401. Additionally, section 37–92–402(4) requires the division engineer to revise the 1978 tabulation and abandonment list on or before July 1, 1984.

2. In Colorado, "[w]ater right records are kept in the name of the diversion or storage structure, rather than by owner name." *Gardner v. State,* 200 Colo. 221, 227, 614 P.2d 357, 361 (1980).

3. These parties filed joint briefs and advanced identical arguments. For brevity, we refer to these appellants jointly as the state engineer.

4. A third well, Heim Well No. 3, is also located on the former Heim property. Heim Well No. 3 was not listed on the division engineer's 1984 abandonment list, and the water rights for Well No. 3 are not at issue in these proceedings.

the associated water rights and access easements.

Ralph Kaufman, one of the general partners of Castlewood, testified that Castlewood never used Heim Wells Nos. 1 and 2. John Cavey, another general partner of Castlewood, testified that tenants on the farm property used well water for irrigation to raise hay in 1976, 1977 and 1978, but on cross-examination he conceded that this water may have come from the third Heim Well not at issue in these abandonment proceedings. Cavey also testified that he authorized the Douglas County Road and Bridge Department and the Franktown Fire Department to use water from Well No. 2, and that these entities did use water from Well No. 2.

Cavey testified that Castlewood originally considered use of the water from Wells Nos. 1 and 2 as a centralized water supply for the residential lots in the Castlewood North subdivision. However, Cavey testified further that

[a]fter a lot of talks with the county commissioner and county planning department, we figured that the economics wouldn't bear out going with the cost of trying to get that zoning that we desired. It would be cheaper to go with 5–acre and 10–acre sites and let the individuals ... go with their own individual wells.

Cavey stated that Castlewood realized in 1976 that use of the wells to provide a centralized water supply system would not be feasible. From 1976 on, Cavey testified, Castlewood's intent in retaining ownership of the wells and water rights was to find a purchaser who would use the water.

In 1977, Castlewood entered into an agreement to sell Heim Well No. 1 and its water right to Parker Water and Sanitation District (Parker). This sale was contingent upon Castlewood's ability to obtain a decree for an alternate point of diversion allowing Parker to relocate the well. Cas-

tlewood filed the appropriate application in the water court, but met with opposition from other water users concerned with the injury that might result from relocating the diversion point for Heim Well No. 1. Eventually, Castlewood agreed with the objectors to the dismissal of its application in December 1979, and it informed Parker that Castlewood would be unable to go forward with the sale of Heim Well No. 1.

Kaufman testified that after the sale to Parker failed, Castlewood continued to make efforts to sell Heim Wells Nos. 1 and 2 to other water users. Other evidence in the record, both documentary and testimonial, reflected that Castlewood had entered into negotiations with the owners of the land on which the wells were situated regarding the sale of Heim Well No. 2 in 1978. This effort to sell Well No. 2 also failed.

In April 1984, Castlewood conveyed all its interests in the wells and the water rights decreed to Heim Wells Nos. 1 and 2 to Thiret & Associates, Inc. Thiret, in turn, conveyed the two wells and water rights to Charles A. Ekberg on April 23, 1984. Three days later, Ekberg conveyed the wells and water rights to Hydro–Seek, Inc. The revised abandonment list for Water Division 1 was issued on July 1, 1984. This list contained entries for both Heim Wells Nos. 1 and 2, indicating that the division engineer had determined the water rights for the wells to have been abandoned as to the entire amount of the decreed rights. Both the City of Thornton and Edward B. Sutton acquired their interests in the Heim Wells and water rights after the publication of the abandonment list.[5]

The City of Thornton and Edward B. Sutton filed timely protests to the listing of the water rights for Heim Wells Nos. 1 and 2 on the abandonment list. Several parties then filed entries of appearance as support-

5. Extensive evidence was also presented concerning the use and condition of the wells from the time they were dug until the time of the 1972 supplemental decree adjudicating the water rights for Heim Wells Nos. 1 and 2. This evidence was received for the limited purpose of shedding light on the intent of the owners rele-

vant to the abandonment issue during the period beginning with the date of the supplemental decree. The record contains evidence that the wells were not being used at the time of the supplemental adjudication but were in a condition to permit them to be put to use in a short time.

ers of the inclusion of these water rights on the abandonment listing. A three-day trial on the abandonment listing was held in June 1986. Based on the evidence presented at trial, the water court concluded that the state had established the factual predicate for a statutory presumption of abandonment by showing failure for a ten-year period to apply to a beneficial use the water available under the Heim Well rights when needed. *See* § 37–92–402(11), 15 C.R.S. (1988 Supp.).[6] The water court also concluded, however, that Thornton and Sutton had rebutted the presumption of abandonment by showing "there was never any intent on the part of any owner to abandon the water rights for Wells 1 and 2." Specifically, the water court found that "prior to 1976 the owners intended to use the wells in a centralized water system in their proposed development" but that "[i]n 1976 they determined the wells were not needed for that purpose and they had no other use for the wells. Thereafter their sole purpose in holding the wells was for sale on advantageous terms." The water court concluded that these sale efforts were diligent, noted that a sale was consummated in 1984, and ruled that under the circumstances "the period of holding the wells was not unreasonable." Accordingly, the water court ordered the Heim Wells Nos. 1 and 2 water rights deleted from the 1984 division engineer's revised abandonment list.

The state engineer, the division engineer, and Cottonwood Water and Sanitation District appealed the water court's ruling to this court. Denver Southeast Suburban Water and Sanitation District, although formally aligned as an appellee, filed a brief in support of the division engineer's abandonment determination. Thornton and Sutton argued to uphold the water court's determination.

### III.

Our analysis of the issues presented is guided by well-established principles of Col-

orado water law. A water right is a property right, *Weibert v. Rothe Bros.,* 200 Colo. 310, 315, 618 P.2d 1367, 1371 (1980), which "may be bought and sold without regard to the real property over which the water flows," *Navajo Dev. Co. v. Sanderson,* 655 P.2d 1374, 1377 (Colo.1982). The primary value of a water right is in its relative priority and the right to use the resource. *Navajo Dev.,* 655 P.2d at 1377; *see* § 37–92–103(12), 15 C.R.S. (1973) (definition of "water right").

We have established in a long series of decisions that a water right can be terminated by abandonment. *E.g., Southeastern Colo. Water Conservancy Dist. v. Twin Lakes Associates, Inc.,* 770 P.2d 1231 (Colo.1989); *Masters Inv. Co. v. Irrigationists Ass'n,* 702 P.2d 268 (Colo.1985); *Beaver Park Water, Inc. v. City of Victor,* 649 P.2d 300 (Colo.1982); *Knapp v. Colo. River Water Conservation Dist.,* 131 Colo. 42, 279 P.2d 420 (1955); *Sieber v. Frink,* 7 Colo. 148, 2 P. 901 (1883). "Abandonment of a water right" is specifically recognized by the Water Right Act and is defined as "the termination of a water right in whole or in part as a result of the intent of the owner thereof to discontinue permanently the use of all or part of the water available thereunder." § 37–92–103(2), 15 C.R.S. (1973). This definition is consistent with our cases applying common-law abandonment principles. *E.g., Twin Lakes,* 770 P.2d at 1237 (abandonment requires a concurrence of nonuse and intent to abandon); *Beaver Park,* 649 P.2d at 302; *Farmers Reservoir & Irrigation Co. v. Fulton Irrigating Ditch Co.,* 108 Colo. 482, 487, 120 P.2d 196, 199 (1941).

"[I]ntent is the very essence of abandonment." *Beaver Park,* 649 P.2d at 302; *accord, e.g., Masters,* 702 P.2d at 271. The requisite intent need not be proved directly but may be inferred from all the circumstances of the case. *Beaver Park,* 649 P.2d at 302; *Knapp,* 131 Colo. at 53–54, 279 P.2d at 426; *South Boulder Canon Ditch Co. v. Davidson Ditch & Reservoir*

---

6. The water court found that "[t]he period during which the Court can find abandonment is the time between the date of the decree, May 18, 1972, and the publication of the Division Engineer's Abandonment List, July 1, 1984." On appeal, no party contests this finding.

*Co.,* 87 Colo. 391, 392, 288 P. 177, 178 (1930).

Continued and unexplained nonuse of a water right for an unreasonable period of time raises a rebuttable presumption of intent to abandon. *Twin Lakes,* 770 P.2d at 1237; *Masters,* 702 P.2d at 272; *Beaver Park,* 649 P.2d at 302; *Hallenbeck v. Granby Ditch & Reservoir Co.,* 160 Colo. 555, 567, 420 P.2d 419, 426 (1966); *Sieber v. Frink,* 7 Colo. at 154, 2 P. at 904. This presumption shifts the burden of going forward to the water right owner to introduce sufficient evidence to rebut the presumption established by nonuse. *Twin Lakes,* 770 P.2d at 1237; *Masters,* 702 P.2d at 272; *Beaver Park,* 649 P.2d at 302.

Under our common-law cases, the amount of time that will be deemed unreasonable so as to give rise to a presumption of abandonment varies with the facts of each case. *Twin Lakes,* 770 P.2d at 1238. For the purpose of the abandonment list at issue in this case, however, the legislature has enacted a statute setting ten years as the period of time that will be deemed an unreasonable period of nonuse. § 37–92–402(11), 15 C.R.S. (1988 Supp.). Additionally, the nonused amount presumed to be abandoned must be "available under a water right" and "needed by the person entitled to use" it. *Id.* In preparing the abandonment list, however, the presumption of abandonment "may be waived by the division engineer or the state engineer if special circumstances negate an intent to abandon." *Id.*

In order to rebut a presumption of abandonment it is necessary to adduce evidence that the water right owner did not intend to abandon the water right notwithstanding the long period of nonuse that gave rise to the presumption. Our earliest decisions held simply that the presumption of abandonment "may be overcome by other satisfactory proofs." *Sieber v. Frink,* 7 Colo. at 154, 2 P. at 904, *quoted and cited with approval in South Boulder Canon Ditch Co. v. Davidson Ditch & Reservoir Co.,* 87 Colo. at 392, 288 P. at 178; *accord Beaver Park,* 649 P.2d at 302. Later cases elaborated that "to rebut the presumption of abandonment arising from [a] long period of nonuse, there must be established not merely expressions of desire or hope or intent, but some fact or condition excusing such long nonuse." *Mason v. Hills Land & Cattle Co.,* 119 Colo. 404, 408–09, 204 P.2d 153, 156 (1949); *accord Twin Lakes,* 770 P.2d at 1238 ("To rebut the presumption of abandonment arising from nonuse, there must be evidence of facts or conditions that excuse the long period of nonuse."); *CF & I Steel Corp. v. Purgatoire River Water Conservancy District,* 183 Colo. 135, 140, 515 P.2d 456, 458 (1973); *Hallenbeck,* 160 Colo. at 567, 420 P.2d at 426; *Knapp,* 131 Colo. at 55, 279 P.2d at 426. In other cases we have specifically focused on the critical element of intent and have held that sufficient evidence of the owner's intent not to abandon the water right will rebut the presumption of abandonment arising from unreasonably long nonuse. *Masters,* 702 P.2d at 272; *Beaver Park,* 649 P.2d at 302–03; *cf. Upper Harmony Ditch Co. v. Carwin,* 189 Colo. 190, 194, 539 P.2d 1282, 1285 (1975) (ditch easement abandonment case).

As our earlier decisions have made clear, intent has always been the critical element in determining abandonment. *E.g., Masters,* 702 P.2d at 271; *Beaver Park,* 649 P.2d at 302. Therefore, although some of our cases inquire into excuse for a long period of nonuse in determining whether a presumption of abandonment has been rebutted, *e.g., Twin Lakes,* 770 P.2d at 1238; *Knapp,* 131 Colo. at 55, 279 P.2d at 426, the existence of such an excuse is not independently significant but is relevant to the determination of the owner's intent. *See Masters,* 702 P.2d at 272; *Hallenbeck,* 160 Colo. at 567–68, 420 P.2d at 426. Thus, evidence sufficient to show that during the period of nonuse the owner never intended to discontinue permanently the use of the water available under the water right will rebut the statutory presumption of abandonment. *See Beaver Park,* 649 P.2d at 302; § 37–92–103(2).

Statements of intent by the owner of water rights, standing alone, however, are insufficient to rebut the presump-

tion of abandonment. *Beaver Park*, 649 P.2d at 302; *Hallenbeck*, 160 Colo. at 567, 420 P.2d at 426; *Knapp*, 131 Colo. at 55, 279 P.2d at 426–27. Also, in the absence of other consistent and competent rebuttal evidence, an owner's testimony of a desire to place a water right on the market for sale will not defeat a presumption of abandonment. *Twin Lakes*, 770 P.2d at 1238.[7]

■■■■■ Abandonment of a water right must be established by a preponderance of the evidence, *Masters*, 702 P.2d 268, 272 (Colo.1985); § 13–25–127(1), 6A C.R.S. (1987) (burden of proof in any civil action shall be by a preponderance of the evidence); *cf. Gerner v. Sullivan*, 768 P.2d 701 (Colo.1989) (applying § 13–25–127(1) in adverse possession case). Because abandonment is a question of fact depending on the particular circumstances of each case, the water court's resolution of the factual issues presented will not be disturbed on appeal unless the evidence is wholly insufficient to support the decision. *Twin Lakes*, 770 P.2d at 1239; *Masters*, 702 P.2d at 272; *Beaver Park*, 649 P.2d at 302. A final determination of abandonment by the water court terminates the water right. *See* § 37–92–103(2), 15 C.R.S. (1973) (defining "abandonment of a water right").

## IV.

Applying the foregoing principles, we conclude that the evidence supports the water court's determination that the water rights for Heim Wells Nos. 1 and 2 have not been abandoned.

## A.

■■■■ The water court first found that the state engineer and supporters had established a presumption of abandonment pursuant to section 37–92–402(11), 15 C.R.S. (1988 Supp.), and that therefore the water rights owners were required to come forward with evidence to rebut the presumption. On appeal, no party contests the water court's finding that the statutory presumption of abandonment was established. Moreover, this finding is supported by competent evidence in the record, and thus will not be disturbed on appeal. *Twin Lakes*, 770 P.2d at 1239; *Masters*, 702 P.2d at 272; *Beaver Park*, 649 P.2d at 302; *Knapp*, 131 Colo. at 55, 279 P.2d at 426.

■■■■ The water court also found, however, that the presumption was rebutted since the "preponderance of all the evidence [showed] that there was never any intent on the part of any owner to abandon the water rights for Wells 1 and 2." [8] This finding is supported by the record. First, two general partners of Castlewood, the owner of the water rights from December 1971 to April 1984, testified that Castlewood did not ever intend to abandon the water rights at issue here. Next, one of these general partners testified that Castle-

7. We conclude that our common-law abandonment decisions are applicable to issues arising under the statutory presumption of abandonment in the Water Right Act based upon general statutory interpretation principles. The General Assembly is presumed cognizant of the judicial precedent in a particular area when it enacts legislation in that area. *Rauschenberger v. Radetsky*, 745 P.2d 640, 643 (Colo.1987); *People v. Green*, 734 P.2d 616, 621 (Colo.1987). Additionally, unless it otherwise provides, the legislature is presumed to adopt the construction that prior judicial decisions have placed on particular language when such language is employed in subsequent statutes. *People v. Cooke*, 150 Colo. 52, 62, 370 P.2d 896, 901 (1962). Accordingly, since the Water Right Act provides for a "rebuttable presumption of abandonment of a water right," § 37–92–402(11), but does not define what evidence is required to rebut the presumption, we may assume that the legislature was knowledgeable of and adopted the standards for evaluating rebuttal evidence contained in our common-law abandonment decisions.

8. The water court specifically found as follows:

The presumption was rebutted. The preponderance of all the evidence is that there was never any intent on the part of any owner to abandon the water rights for Wells 1 and 2. The evidence is, among other things, prior to 1976 the owners intended to use the wells in a centralized water system in their proposed development. In 1976 they determined the wells were not needed for that purpose and they had no other use for the wells. Thereafter their sole purpose in holding the wells was for sale on advantageous terms. Their efforts for sale were diligent and a sale was consummated eight years later, in 1984. Under the circumstances, the period of holding the wells was not unreasonable.

wood originally considered using the wells and water rights for a centralized water supply for the Castlewood North subdivision development. After Castlewood realized that a centralized water supply would be impractical, it made efforts to sell both wells to other parties who would use the water available under the water rights. These efforts were eventually successful in 1984.

The state engineer argues that this evidence is insufficient to rebut the statutory presumption of abandonment since it amounts to only the subjective declarations of the water rights owner that it did not intend to abandon the rights. The state engineer correctly asserts that statements of intent by the owner of the water rights are insufficient by themselves to rebut a presumption of abandonment. *Knapp*, 131 Colo. at 55, 279 P.2d at 426–27; *accord Beaver Park*, 649 P.2d at 302. However, the evidence presented here consisted of more than the statements by the Castlewood general partners. There were at least three documents introduced outlining Castlewood's proposed sale of Heim Well No. 1 to Parker and Castlewood's related effort to obtain an alternate point of diversion decree for that well from the water court in the years 1977 to 1979. Other documents supported the general partner's testimony regarding the negotiations to sell Heim Well No. 2 in 1978, and the counsel for the prospective purchaser also testified as to the negotiations regarding the sale of Well No. 2.

Where the record contains other evidence consistent with the statements of a water right owner, the water court may consider the totality of the evidence in evaluating whether a water right has been abandoned. *See Beaver Park*, 649 P.2d at 302. In the present case, the totality of the evidence of the water rights owners' testimony, the documentary evidence of attempts to sell the water rights, and the testimony of counsel for a potential purchaser are sufficient to support the water court's finding that there was never any intent to abandon the Heim Well water rights.

B.

The state engineer contends that the presumption of abandonment can be overcome only by evidence of a good faith intent to place the water to beneficial use or by evidence establishing reasonable justification for nonuse. Evidence of intent to sell a water right is not sufficient to rebut the presumption, according to this argument. We disagree.

■■■ The critical inquiry in assessing a claim of abandonment is the owner's intent. *E.g., Masters*, 702 P.2d at 271; *Beaver Park*, 649 P.2d at 302. The requisite intent, as expressed in the definition of "abandonment of a water right" is "the intent of the owner thereof to discontinue permanently the use of all or part of the water available thereunder." § 37–92–103(2). In this case, the testimony presented by the owners of the water rights during the period in question indicated that the intent of their sale efforts was to find a purchaser who could make use of the water available under the Heim Well rights. The other evidence of sale efforts contained in the record supports the owners' statements. This intent to convey the water rights to a purchaser who would put the water to beneficial use is inconsistent with the intent "to discontinue permanently" the use of water available under the right. Moreover, a water right is a property right that can be bought and sold. *E.g., Navajo Dev.*, 655 P.2d at 1377. It would be inconsistent with this well-established principle to hold that an owner who no longer intends to put to use water available under a water right but instead plans to sell the right to another has thereby abandoned that right.

■■ The state engineer also relies on language in our cases that suggests that the presumption of abandonment based on an unreasonable period of nonuse can be rebutted only by establishing reasonable justification for nonuse. *See Twin Lakes*, 770 P.2d at 1238. However, this argument misconceives the key issue to be determined in an abandonment proceeding. As stated above, intent has always been the critical element in determining abandon-

ment. The presence of a reasonable justification or excuse for the nonuse is not independently significant but is instead relevant to the determination of the owner's intent. In the present case, the evidence was sufficient to demonstrate the owner's lack of intent to abandon the Heim Well water rights. The owners of the water rights for Heim Wells Nos. 1 and 2 presented evidence that when Castlewood first acquired the water rights it tentatively planned to use the rights for development of a central water system for a subdivision that it was creating. As soon as Castlewood was satisfied that this plan was not practical, it determined to sell the water rights and exerted active efforts to accomplish such a sale. These efforts ultimately proved successful. This evidence, which the trial court credited, demonstrates an absence of intent to abandon the water rights, and the trial court properly found that it was adequate to rebut the presumption of abandonment.

## C.

▆▆ The state engineer also contends that the water court has permitted the statutory presumption of abandonment to be rebutted by nothing more than evidence of speculative intent. Specifically, the state engineer points to the water court's finding that after 1976, Castlewood's "sole purpose in holding the wells was for sale on advantageous terms." This argument once again fails to consider that the critical issue in an abandonment case is whether the owner intended to discontinue permanently the use of the water available under the right in question. *Beaver Park*, 649 P.2d at 302; § 37–92–103(2). A presumption of intent to abandon based on a long period of nonuse is recognized because of the difficulty of obtaining direct evidence of intent and because a long period of nonuse logically suggests an intent to abandon. The presumption is a strong one, for we have not permitted it to be rebutted by mere testimony of an owner concerning intent not to abandon or intent to sell. Actual good faith efforts to sell a water right, however, are strongly indicative of absence of intent to abandon and provide objective

evidence of the intent that a water right not be abandoned. We therefore reject the state engineer's argument based on allegedly speculative intent as inapposite.

Our conclusion that good faith efforts to sell a water right will rebut the statutory abandonment presumption is supported by our previous holdings in common-law abandonment cases. In *Beaver Park*, we held that evidence consisting largely of the leasing, sale, and mortgaging of the water rights at issue was sufficient to rebut a presumption of abandonment arising from twenty years of nonuse. 649 P.2d at 302–03. This transactional evidence in *Beaver Park* indicated that the water rights at issue "were involved in constant activity during the twenty years of nonuse, all of which sufficiently reveals that there was never any intention to relinquish, surrender, or give up these water rights." 649 P.2d at 303.

By contrast, in *CF & I Steel Corp. v. Purgatoire River Water Conservancy Dist.*, 183 Colo. 135, 515 P.2d 456 (1973), relied on by the state engineer, we rejected an argument that economics justified an extended period of nonuse and affirmed the trial court's finding of abandonment after fifty-four years of nonuse. In *CF & I Steel* there was no evidence of any efforts to lease, sell, or otherwise use the water rights during this long period of nonuse, and CF & I had dismantled its diversion and transportation works, making it impossible to divert water at its decreed points. 183 Colo. at 137, 140–41, 515 P.2d at 457, 459. The *CF & I Steel* case is thus distinguishable from the instant case, where there is evidence of continued efforts to sell the water rights during the period of nonuse, the Heim Well diversion structures remained in place, and there was evidence that the wells could be made operational on short notice. *Cf. Beaver Park*, 649 P.2d at 302 (evidence that pumping station was operational during portion of period of nonuse and that a replacement station later could have been made operational within thirty days was evidence of lack of intent to abandon).

Lastly, in *Knapp*, 131 Colo. 42, 279 P.2d 420 (1955), also relied on by the state engineer, we upheld a finding of abandonment where the diversion and transportation works by which water was originally brought to a ranch had been allowed to deteriorate, the water available under the rights had not been used for about twenty-six years, the land had been left vacant for over ten years at one point, and there was no independent evidence, other than the owner's testimony, of sale efforts. *Id.* at 49–51, 55–56, 279 P.2d at 423–24, 427. Again, the facts in *Knapp* are distinguishable from those in the instant case. Here, testimony in the record indicated the Heim Wells could be made operational on short notice, the period of nonuse was shorter, and there was independent evidence, other than the owners' testimony, of actual efforts to sell the Heim Well water rights.

Overall, the fact pattern of *Beaver Park* is most analogous to the instant case, and our holding in *Beaver Park* supports the conclusion that evidence of good faith efforts to sell a water right can rebut the statutory abandonment presumption. *See* 649 P.2d at 303. A finding of abandonment depends on the facts and circumstances of each case. *E.g., Twin Lakes,* 770 P.2d at 1238. In the present case, the evidence presented in the water court is adequate to support the water court's determination that during the period of nonuse there was never any intention to discontinue permanently the use of the water available under the Heim Well water rights. Accordingly, we affirm the water court's ruling that the statutory presumption of abandonment was rebutted.

## V.

Denver Southeast Suburban Water and Sanitation District contends that the water court erred by failing to consider whether the Heim Well water rights were partially abandoned. Denver Southeast's position, as set forth in its brief, is that an abandonment should be found as to Well No. 2 since it allegedly never produced a usable amount of water for either irrigation or municipal purposes. As to Well No. 1, Denver Southeast asserts that it was never used for municipal purposes and that a partial abandonment as to municipal purposes should thus be found.

▮ To the extent that Denver Southeast's argument is based on the contention that at no point in time was water from Well No. 2 produced at the rate decreed and utilized for irrigation and municipal purposes or that no amount of water from Well No. 1 was ever used for municipal purposes, the argument is foreclosed by the principle of res judicata. *Weibert v. Rothe Bros.,* 200 Colo. 310, 318, 618 P.2d 1367, 1372 (1980). This is so because the decree adjudicating the water rights confirmed that water had been applied to beneficial use in the amounts and for the purposes decreed. *Id.*

▮ Possible limitations on diversions under a decree based on historical use or on the amounts of water that can be beneficially used for the purposes claimed, however, are not issues in an adjudication proceeding. *Id.* As we understand Denver Southeast's argument, it is based principally on the contention that certain limitations are to be read into every water decree by implication and by historical use without regard to the owner's intent. *See, e.g., Weibert,* 200 Colo. 310, 618 P.2d 1367. Denver Southeast apparently would require the division engineer to define the limitations based on need and historical use and to determine that the decreed rights have been "abandoned" to the extent that they purport to permit diversions in excess of any such limitations. This determination would require, among other things, an inquiry into the amount of water that could be used beneficially for the decreed purposes and the times that such water could be diverted for such beneficial uses. *See Weibert,* 200 Colo. at 316, 618 P.2d at 1371. We conclude, however, that this process of defining the limitations of a water right is not fairly comprehended within the term "abandonment." [9]

9. An inquiry into implied limitations and histor-

ical use is pertinent, however, in a change of

In providing for the preparation of abandonment lists, the legislature employed the term "abandonment," which has been given meaning in a long series of our water cases and which is incorporated in the defined term "abandonment of a water right" in the Water Right Act. § 37–92–103(2). This statutory definition is consistent with our prior cases and defines abandonment of a water right as "the termination of a water right in whole or in part as a result of the intent of the owner thereof to discontinue permanently the use of all or part of the water available thereunder." § 37–92–103(2). The tabulation and abandonment list to be prepared by the division engineer must reflect "judgments and decrees determining, changing, or otherwise affecting water rights and conditional water rights" entered since the prior tabulation. § 37–92–402(1)(a). Nothing in the statute suggests that in preparing the abandonment list it is intended that the division engineer attempt to refine the decreed rights by defining limitations not apparent on the face of the decrees. Instead, the division engineer is directed to prepare a list "tabulating the water rights which he determines to have been abandoned in whole or in part," § 37–92–402(1)(a), and in doing so to be guided by the criteria in section 37–92–402(11), which establishes a rebuttable presumption of abandonment based on ten or more years of nonuse.

In preparing an abandonment list, therefore, the division engineer must determine whether an owner intended to discontinue permanently the use of all or part of the water available under the water rights. See § 37–92–402(11). The issues of any limitations that may exist as to a water right by reason of implication or historical use and without regard to the owner's intent are not within the issues to be addressed in preparation of an abandonment list. The water court therefore properly declined to consider Denver Southeast's arguments in this regard. To the extent that Denver Southeast also argues issues properly within the scope of an abandonment list proceeding, those arguments are ad-

dressed by the preceding sections of this opinion.

## VI.

In summary, we hold that the evidence in this case, including evidence of diligent efforts to sell the water rights decreed to the Heim Wells Nos. 1 and 2, was sufficient to support the water court's determination that the water rights owners had rebutted the statutory presumption of abandonment arising from nonuse of the water available under the water rights for ten or more years. See § 37–92–402(11). Res judicata forecloses Denver Southeast's argument that, contrary to the water rights decrees, one of the wells never produced the amounts decreed and the other never was used for certain of the decreed purposes. Additionally, Denver Southeast's contention that the water rights decreed to the Heim Wells Nos. 1 and 2 were partially abandoned based on historical levels and types of use raises issues outside the scope of these statutory abandonment proceedings. Therefore, the water court acted properly in not considering that contention as a basis for finding a partial abandonment of the Heim Well water rights. Accordingly, we affirm the judgment of the water court deleting the water rights decreed to Heim Wells Nos. 1 and 2 from the 1984 revised abandonment list for Water Division No. 1.

QUINN, C.J., dissents.

ROVIRA and MULLARKEY, JJ., join in the dissent.

QUINN, Chief Justice, dissenting:

In affirming the judgment of the water court, the majority rejects the claim asserted by the state engineer that evidence of intent to sell a water right is not sufficient to rebut the statutory presumption of abandonment arising from a "failure for a period of ten years or more to apply to a beneficial use the water available under a water right when needed by the person entitled to use [the water right]." § 37–92–402(11), 15 C.R.S. (1988 Supp.).

water right proceeding in order to assess whether the proposed change would result in injury to

other users. *Weibert,* 200 Colo. at 314–15, 318, 618 P.2d at 1370, 1372–73.

The majority instead holds that an intent to sell a water right at an advantageous price, coupled with some evidence of an effort to sell, is sufficient to rebut the statutory presumption of abandonment. Op. at 20–21. With this proposition I disagree. I believe the rule adopted by the majority frustrates the long-standing principle of Colorado water law favoring the maximum beneficial use of a water right in a manner consistent with the purposes for which the water right was decreed. *See Coffin v. Left Hand Ditch Co.,* 6 Colo. 443 (1882). I accordingly dissent.

Beneficial use of a water right is the unifying principle of Colorado water law. In this state of scarce water resources there is a compelling need to assure that available water is put to beneficial use. The law of abandonment is nothing less than a recognition and reflection of this fundamental policy. I acknowledge that the issue of abandonment depends on the particular circumstances of the case and, for this reason, great deference is accorded the water court's resolution of this issue. *See Southeastern Colorado Water Conservancy District v. Twin Lakes Associates,* 770 P.2d 1231 (Colo.1989); *Masters Investment Co. v. Irrigationists Association,* 702 P.2d 268 (Colo.1985); *Beaver Park Water, Inc. v. City of Victor,* 649 P.2d 300 (Colo.1982); *Knapp v. Colorado River Water Conservation District,* 131 Colo. 42, 279 P.2d 420 (1955). This rule of deference, however, presumes not only the legal sufficiency of the evidence to support the water court's resolution of the abandonment issue but also the application of a proper legal standard in resolving that issue.

I agree with the majority that an intent to abandon "has always been the critical element in determining abandonment." Op. at 18. The continued and unexplained nonuse for a period of ten years or more, however, gives rise to a presumption of abandonment precisely because it is compelling evidence that the owner of the water right had no intent to apply the water to any of the beneficial uses for which the water right was decreed. While this presumption of abandonment may be rebutted by evidence of justifiable excuse for the nonuse, *Knapp,* 131 Colo. at 54–55, 279 P.2d at 426, such evidence must consist of "more than mere subjective declarations by the owner of the water right that he did not intend to abandon the right, or that he intended to resume the right at some future time." *Twin Lakes Associates,* 770 P.2d at 1238. Acceptable justifications for an unreasonable period of nonuse, such as the statutory period of ten years or more, are extremely limited. *Id.; Beaver Park,* 649 P.2d at 302 n. 1. Thus, present economic difficulties, even when coupled with an expectation of a more favorable economic climate in the future, do not amount to justifiable excuse. *CF & I Steel Corp. v. Purgatoire River Water Conservancy District,* 183 Colo. 135, 140, 515 P.2d 456, 458 (1973). Nor will economic speculation, in the absence of actual and beneficial use of the water right, constitute justifiable excuse to rebut the presumption of abandonment. *Knapp,* 131 Colo. at 55–56, 279 P.2d at 427.

To be sure, a water right is a property right that can be bought and sold, but its alienability has always been subject to the law of abandonment. Once a presumption of abandonment has been established through ten years or more of nonuse, evidence consisting of no more than an intent and some effort to sell a water right at an advantageous price should be deemed insufficient as a matter of law to rebut the presumption of abandonment. Sale expectancy, it has been stated, "is wholly foreign to the principle of keeping life in a proprietary right and is no excuse for failure to perform that which the law requires." *Knapp,* 131 Colo. at 56, 279 P.2d at 427. To allow evidence of sale expectancy, and nothing more, to defeat a presumption of abandonment results in encouraging nonusing owners of water rights to stockpile their interests for some future time when maximum profit can be derived from a sale, since the presumption of abandonment will be easily rebuttable by evidence of an intent and some effort to sell the water rights. Such a result, in my view, is irreconcilable with the long-standing principle of Colorado water law that requires the maxi-

mum beneficial use of the state's limited water resources.[1]

The evidence in this case is undisputed that Castlewood Development Company acquired the water rights in 1972 and that for the next twelve years it failed to make beneficial use of the water rights for any of the purposes for which the water rights were decreed in 1972. Although Castlewood gave some consideration to using the water rights to provide a centralized water supply system in 1976, it quickly abandoned that prospect as economically unfeasible. Castlewood's unsuccessful attempt in 1977 to obtain a decree for a change in the point of diversion was not related in any way to its intent to use the water rights but, rather, was merely incidental to an effort to sell the water rights for an advantageous price to Parker Water and Sanitation District. Castlewood's evidence, in short, demonstrates nothing more than an intent and some sporadic effort over the years to sell the water rights at a gainful profit.

Under this state of the record, the water court expressly found that Castlewood's nonuse of the water rights for twelve years gave rise to the statutory presumption of abandonment, but then, notwithstanding the fact that Castlewood's sole purpose in retaining the water rights was for sale rather than use, the water court concluded that the presumption of abandonment had been sufficiently rebutted. In my view, the water court's conclusion is at odds with its factual findings, and, more importantly, is predicated on an erroneous rule of law— namely, that evidence of an intent and some effort to sell water rights at an advantageous price is sufficient to rebut the presumption of abandonment arising from nonuse of the water rights for a period of ten years or more.

I would hold that where, as here, the statutory presumption of abandonment has been established as a result of a failure to make beneficial use of the water rights for a period of ten years or more, evidence of an intent and some effort to sell the water rights at an advantageous price during the period of nonuse is insufficient as a matter of law to rebut the presumption of abandonment. On that basis, I would reverse the judgment of the water court.

I am authorized to say that ROVIRA and MULLARKEY, JJ., join in the dissent.

---

**1.** The majority relies heavily on *Beaver Park Water, Inc. v. City of Victor,* 649 P.2d 300 (Colo. 1982), in holding that there was sufficient evidence in this case to rebut the presumption of abandonment. While I cannot say that *Beaver Park* is categorically dissimilar to this case, there are several features of *Beaver Park* that, in my view, go beyond the evidence of a mere intent and effort to sell water rights at an advantageous price. In *Beaver Park* the owners and lessees of certain water rights on Beaver Creek sought a judgment declaring the "Altman water rights" in Beaver Creek abandoned because of nonuse between 1957 and 1977. The water rights in question had originally been used for mining and milling gold, but in 1957 the mill ceased using the Altman water rights and began drawing its water from the City of Victor's water system until 1961, when the mill closed. The water rights were then leased to the City of Victor for twenty-five years as a "standby" or emergency source of water. In upholding the water court's determination that the presumption of abandonment had been rebutted, this court pointed to several factors, including the following: (1) the water rights had been leased to the City of Victor as an emergency source of water because the city's water supply, which had its source in a nearby reservoir, had begun to run dry; (2) an adequate water supply to meet the city's needs was available from the reservoir during the period of nonuse; and (3) a pumping station, which was operational during the first part of the period of nonuse, was eventually dismantled because of lack of immediate need, but a replacement station could have been operational within 30 days if the need to use the water rights arose. Although other factors in *Beaver Park* were similar to the evidentiary state of the record in the instant case, the three aforementioned factors are quite dissimilar, in that the Altman water rights were serving a useful municipal purpose by providing the City of Victor with a "standby" source of water. Moreover, *Beaver Park* did not directly address the narrow question raised here, which is whether evidence of an intent and some effort to sell a water right at an advantageous price is sufficient to overcome the statutory presumption of abandonment arising from nonuse for any of the purposes for which the water right was decreed.