**The CITY AND COUNTY OF DENVER, Acting By and Through its BOARD OF WATER COMMISSIONERS, Appellant,**

v.

**MIDDLE PARK WATER CONSERVANCY DISTRICT, and Orlyn J. Bell, Division Engineer for Water Division No. 5; and Harold D. Simpson, State Engineer, Appellees.**

No. 96SA15.

Supreme Court of Colorado,
En Banc.

Oct. 21, 1996.

---

Patricia L. Wells, General Counsel, Denver Water Board, Michael L. Walker, Casey S. Funk, Amy L. Moore, Denver, for Appellant.

Baker, Cazier and McGowan, Stanley W. Cazier, Granby, for Appellee, Middle Park Water Conservancy District.

Gale A. Norton, Attorney General, Timothy M. Tymkovich, Solicitor General, Jennifer L. Gimbel, Deputy Attorney General, Lee E. Miller, First Assistant Attorney General, Peter A. Fahmy, Assistant Attorney General, Natural Resources Section, Denver, for Appellees, Division and State Engineers.

Chief Justice VOLLACK delivered the Opinion of the Court.

The City and County of Denver (Denver), acting by and through its Board of Water Commissioners, appeals the judgment of the District Court, Water Division No. 5 (the water court), which held that Denver had not abandoned the subject water rights that were placed on the 1990 abandonment list. We reverse and hold that Denver did abandon the subject water rights.

## I.

The facts in this case are essentially undisputed. Denver owns and operates a water system in the upper Fraser River basin ("Fraser River Diversion Project") which diverts and collects water for delivery through the Moffat Tunnel for municipal uses ("municipal water rights") in the Denver metropolitan area. The Fraser River Diversion Project was decreed in 1937 with an appropriation date of July 4, 1921. The Fraser River Diversion Project includes points of diversion on St. Louis Creek and its tributaries.

Beginning in 1955, Denver purchased various water rights along St. Louis Creek. These water rights were located downstream of Denver's Fraser River Diversion Project points of diversion and were senior to Denver's municipal water rights. These senior water rights had historically been used for irrigation ("irrigation water rights") and included: AA Ditch, Gaskill Ditch, St. Louis Ditch, and St. Louis No. 2 Ditch. According to Denver, it purchased these senior irrigation water rights to control or "retire" the call against its upstream junior municipal water rights. Thus, Denver never used the irrigation water rights it purchased. Because the call of these senior irrigation rights was permanently removed from the stream, Denver was not required to bypass waters at its upstream junior points of diversion to meet those rights when it exercised its 1921 rights.

In 1989, the Division Engineer for Water Division No. 5 (the water engineer) instructed the water commissioners within his division to identify potentially abandoned water rights and file field reports with his office. A water commissioner then prepared a field inspection report for each of Denver's irrigation water rights and indicated that these water rights were potentially abandoned. The water commissioner determined that Denver had not beneficially used the irrigation water rights for at least ten years. Based on the water commissioner's reports, the division engineer included the irrigation water rights at issue on the 1990 abandonment list.

Denver did not object to the inclusion of these irrigation water rights on the decennial abandonment list. However, Middle Park Water Conservancy District (MPWCD) filed a statement of objection claiming that "[t]he water rights ... are not abandoned but are being diverted at existing decreed junior water right locations by the Denver Water Department" without a change in point of diversion or use. After the division engineer investigated MPWCD's objection, he continued to include the subject irrigation water rights on the revised decennial abandonment list.

Again, Denver did not object to the inclusion of the irrigation water rights in the revised decennial abandonment list. However, MPWCD again protested, stating that MPWCD owns water rights that may be adversely affected by Denver's abandonment of its irrigation water rights. After reviewing MPWCD's protest, the division engineer reverified the water commissioner's information on the irrigation water rights and again concluded that the water rights had been abandoned.

The water court then referred to a water referee MPWCD's protest to the inclusion of the subject irrigation water rights on the decennial abandonment list. The attorney general entered its appearance on behalf of the state and division engineers. The attorney general and MPWCD entered into a stipulation in which MPWCD agreed that the engineers had made a *prima facie* showing of abandonment. Denver was not a party to this proceeding or the stipulation. On December 29, 1994, the water referee entered its ruling that the irrigation water rights should be removed from the decennial abandonment list. Pursuant to section 37–92–304(2), 15 C.R.S. (1990), Denver protested the ruling of the water referee.

At trial, the water court considered Denver's protest against the referee's ruling and made the following findings of fact: (1) Denver discontinued diversions of the subject irrigation water rights after it purchased them; (2) the state engineer's records do not depict any diversions from these water rights in over ten years; (3) Denver's diversions at its St. Louis Creek facilities have been ad-

ministered under its junior 1921 water rights; (4) Denver has never diverted water at its upstream collection facilities under the senior priorities associated with the subject water rights; (5) the division engineer investigated whether the subject water rights met the statutory criteria for abandonment and determined that the subject water rights had been abandoned in whole or in part; (6) the division engineer included the subject water rights on the decennial abandonment list; and (7) Denver did not protest inclusion of the subject water rights on the abandonment list. Nevertheless, the water court held that it was not the intent of Denver to abandon the subject irrigation water rights, but rather, to control them and make the water under them available for diversion under its 1921 municipal water rights. The water court thus affirmed the water referee and removed the subject water rights from the decennial abandonment list. Denver appealed.

## II.

■ The issue before us is whether, pursuant to section 37–92–401(6), 15 C.R.S. (1990), the water court properly determined that the subject irrigation water rights were not abandoned and thereafter properly removed such rights from the decennial abandonment list.

Under the Water Right Determination and Administration Act of 1969, §§ 37–92–101 to –602, 15 C.R.S. (1990) ("the Act"), the division engineer must prepare a tabulation of all water rights and conditional rights in the engineer's division. § 37–92–401(1), 15 C.R.S. (1990). The division engineer must also prepare decennially an abandonment list comprising all the absolute water rights which he determines to have been abandoned in whole or in part and which previously have not been adjudicated as abandoned. *Id.* The test used by a division engineer to determine abandonment is as follows:

[F]ailure for a period of ten years or more to apply to a beneficial use the water available under a water right when needed by the person entitled to use same shall create a rebuttable presumption of abandonment of a water right with respect to the amount of such available water which has not been so used; except that such presumption may be waived by the division engineer or the state engineer if special circumstances negate an intent to abandon.

§ 37–92–402(11), 15 C.R.S. (1990).

■ The Act defines the phrase "abandonment of a water right" as "the termination of a water right in whole or in part as a result of the intent of the owner thereof to discontinue permanently the use of all or part of the water available thereunder." § 37–92–103(2), 15 C.R.S. (1990). Intent is the critical element in determining abandonment. *City and County of Denver v. Snake River Water Dist.*, 788 P.2d 772, 776 (Colo. 1990). Continued and unexplained non-use of a water right for an unreasonable period of time creates a rebuttable presumption of intent to abandon. *Id.; People v. City of Thornton*, 775 P.2d 11, 18 (Colo.1989). Abandonment is a question of fact depending on the particular circumstances of each case. *Id.* Thus, the water court's resolution of the factual issues presented will not be disturbed on appeal unless the evidence is wholly insufficient to support the decision. *Id.*

■ In an abandonment proceeding, the water court determines only whether particular water rights do or do not exist. *See Masters Inv. Co. v. Irrigationists Ass'n*, 702 P.2d 268, 271–72 (Colo.1985). At issue is whether the water right was extinguished. Water rights are usufructuary in nature, and the use entitlement may be lost or retired to the stream. When this occurs, the property rights adhering to the particular water right no longer exist. *Cf. Weibert v. Rothe Bros.*, 200 Colo. 310, 316–17, 618 P.2d 1367, 1371 (1980). The effect of such abandonment on any other water right diverting from the same source of supply is not the subject of the abandonment inquiry.

Under the facts of this case, the evidence is wholly insufficient to support the water court's decision that the irrigation water rights at issue were not abandoned. Rather, the evidence indicates that Denver had an intent to abandon the subject water rights, which is the critical element in determining abandonment. As the division engineer de-

termined, Denver had failed to apply the water rights to a beneficial use for a period exceeding ten years. This continued non-use of the irrigation water rights for an unreasonable period of time created a presumption that Denver intended to abandon the water rights. Accordingly, the division engineer determined that Denver had abandoned the subject irrigation water rights.

Moreover, Denver established at trial, and the water court found, that Denver discontinued diversions of the subject irrigation water rights after it purchased them and has not diverted these water rights or applied them to a beneficial use for approximately forty years. In fact, the water court found that Denver has never diverted water at its upstream collection facilities under the senior priorities associated with the subject water rights. Despite these factual findings, the water court nevertheless concluded that Denver had not intended to abandon the subject irrigation water rights.

The water court's holding in the current case is inconsistent with our decision in *Snake River*. In *Snake River*, Denver protested inclusion on the decennial abandonment list of certain water rights that Denver had purchased. We held in *Snake River* that Denver had abandoned its water rights despite evidence that Denver entered into license agreements related to the water rights, sold portions of the water rights, and protested the inclusion of the water rights on the abandonment list. *Snake River*, 788 P.2d

at 777–79. In the case at bar, Denver has made no effort toward developing its irrigation water rights for approximately forty years. Moreover, Denver did not protest the inclusion of the subject water rights on the abandonment list. These facts indicate that Denver had an intent to abandon the irrigation water rights at issue. Thus, the evidence before the water court failed to rebut the presumption of abandonment, thereby failing to support the court's conclusion that Denver did not abandon the irrigation water rights at issue.[1]

### III.

Based on the foregoing, we hold that the water court erred in determining that the subject irrigation water rights were not abandoned and therefore should be removed from the decennial abandonment list. Because the water court's conclusion that Denver did not abandon the subject water rights is not supported by the evidence, we reverse and remand to the water court for further proceedings consistent with our holding that Denver has abandoned the irrigation water rights at issue.

1. The water court appeared to be concerned about a possible improper enlargement of Denver's 1921 right, or a seeming change of the senior irrigation rights to Denver's transmountain municipal use. The nature and extent of Denver's water rights as a result of the abandonment were not matters to be determined in the tabulation proceeding. The abandoned senior irrigation rights no longer exist and cannot be included with operative rights for the purpose of water rights administration in the water division.